Frank S. Hedin (SBN 291289)
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com

Adrian Gucovschi (State Bar No. 360988)
**GUCOVSCHI LAW FIRM**
140 Broadway, 46th Floor
New York, New York 10005
Telephone: (212) 884-4230
E-Mail: adrian@gr-firm.com

*Counsel for Plaintiff and Putative Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLISON BLANK, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>PRIMAL QUEEN LLC,<br><br>　　　　　　Defendant. | Case No. _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>(DEMAND FOR JURY TRIAL) |

Plaintiff Allison Blank brings this action on behalf of herself and all others similarly situated against Defendant Primal Queen LLC. Plaintiff makes the following allegations pursuant to the investigation of her counsel and upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## INTRODUCTION

1.     This is a putative class action lawsuit against Defendant for engaging in an illegal "automatic renewal" scheme.

2.     Defendant sells a wide range of woman's nutritional suppplement products through various online channels, including at its website, www.primalqueen.com (the "Website"), and in advertisements on social-media sites, including Instagram. Whenever a consumer purchases Defendant's products – whether it be on the Website or through a social-media advertisement – Defendant surreptitiously enrolls the consumer in an automatically renewing "subscription" that, unbeknownst to the consumer at the time, results in a recurring charges to the consumer's credit card, debit card, or third-party payment account ("Payment Method") every month, in perpetuity until canceled (the "Surprise Subscriptions").

3.     Prior to enrolling Plaintiff and its other customers into Surprise Subscriptions – and thereafter assessing each of their Payment Methods a recurring charge on a monthly basis – Defendant failed to provide the disclosures and authorizations required by California's Automatic Renewal Law ("ARL"), Cal. Bus. Prof. Code §§ 17600, *et seq.*, to any of these consumers.

4.     Pursuant to the ARL, online retailers that offer automatically renewing subscriptions to California consumers must: (i) provide the complete automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent prior to completion of the enrollment process, *see* Cal. Bus. Prof. Code § 17602(a)(1); (ii) obtain consumers' affirmative consent prior to charging their Payment Methods in connection with the subscriptions, *see id.* § 17602(a)(2); and (iii) provide an acknowledgment that includes the automatic renewal offer terms and identifies a cost-effective, timely, and easy-to-use mechanism for consumers to cancel their subscriptions, *see id.* §§ 17602(a)(3), 17602(c).

5.      As discussed in greater detail below, the electronic "checkout flows" on Defendant's Website and social-media advertisements, which Plaintiff and numerous other California consumers used to purchase Defendant's products, uniformly violated each of these core requirements of the ARL. And when consumers eventually do realize that Defendant has enrolled them in Surprise Subscriptions without their authorization – such as when consumers notice Defendant's recurring charges on their credit card billing statements – Defendant then makes it exceedingly difficult and unnecessarily confusing for consumers to cancel the Surprise Subscriptions.

6.      Specifically, Defendant systematically violates the ARL by: (i) failing to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement is fulfilled, in violation of Section 17602(a)(1); (ii) charging consumers' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Section 17602(a)(2); and (iii) failing to provide an acknowledgment that includes the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in direct violation of Section 17602(a)(3). *See* Cal. Bus. & Prof. Code §§ 17602(a)(1)-(3); *see also id.* § 17601(b)(1)-(5) (setting forth the definition of "automatic renewal offer terms" as used in Cal. Bus. Prof. Code § 17602(a)).  The standardized post-order acknowledgment email sends to its customers also fails to disclose a toll-free telephone number or describe another cost-effective, timely, and easy-to-use mechanism for cancellation – making it exceedingly difficult and unnecessarily confusing for consumers to cancel Surprise Subscriptions – in clear violation of Section 17602(c) of the ARL.

7.      As a result of Defendant's violations of Section 17602 of the ARL, the Surprise Subscriptions are deemed "unconditional gifts" pursuant to Section 17603 of the ARL, entitling Plaintiff and the Class to restitution.  *See* Cal. Bus. & Prof. Code § 17603.

8.      Accordingly, Plaintiff brings this action individually and on behalf of all other similarly situated persons whom Defendant enrolled in Surprise Subscriptions and who thereafter, at any point within the applicable limitation period up to and including the date of judgment in this action, incurred an unauthorized charge attributable to a Surprise Subscription. To redress

1   Defendant's unlawful practices, Plaintiff seeks, individually and on behalf of the proposed Class,

2   damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs,

3   for: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§

4   17200, *et seq*.; (2) conversion; (3) violation of California's False Advertising Law ("FAL"), Cal.

5   Bus. & Prof. Code §§ 17500, *et seq*.; (4) violation of California's Consumers Legal Remedies Act

6   ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.; (5) unjust enrichment/restitution; (6) negligent

7   misrepresentation; and (7) fraud.

8   ### THE PARTIES

9   9.   Plaintiff Allison Blank is, and at all times relevant hereto was, a citizen and resident

10  of Hesperia, California.  On or about December 10, 2024, Plaintiff made a purchase of a "Primal

11  Queen Starter Kit" from Defendant via Instagram.  When Plaintiff made her purchase, Defendant

12  enrolled Plaintiff in – unbeknownst to her at the time – a Surprise Subscription.  Consequently,

13  following her purchase, Defendant assessed Plaintiff's Payment Method a recurring charge of $47.21

14  each month.  Promptly after noticing the recurring charges Defendant had made month over month

15  to her Payment Method, Plaintiff canceled her Surprise Subscription. Had Plaintiff known that

16  Defendant would enroll her into an automatically renewing Surprise Subscription, she would not

17  have made a purchase from Defendant at all. As a direct result of Defendant's violations of the ARL

18  as alleged herein, Plaintiff suffered economic injury. The facts giving rise to Plaintiff's claims are

19  materially the same as those of the Class she seeks to represent.

20  10.   Defendant Primal Queen LLC is a Florida corporation that maintains its corporate

21  headquarters and principal place of business in Cape Coral, Florida. Defendant is an online-based

22  retailer of woman's nutritional suppplement products, which it sells to consumers on its Website and

23  through social-media advertisements to consumers nationwide, including throughout California.

24  11.   Plaintiff reserves the right to amend this Complaint to add different or additional

25  defendants, including without limitation any officer, director, employee, supplier, or distributor of

26  Defendant who has knowingly and willfully aided, abetted, and/or conspired in the false and

27  deceptive conduct alleged herein.

28

---

CLASS ACTION COMPLAINT

**JURISDICTION AND VENUE**

12.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this is a putative class action where the aggregate amount sought by members of the proposed class exceeds $5,000,000.00, exclusive of interests and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different from Defendant.

13.     Personal jurisdiction and venue are proper because Plaintiff resides in Hesperia, California, within this judicial District; because Plaintiff made her purchase of Defendant's products while she was physically present in Hesperia, California; because Defendant shipped such goods to Plaintiff's residence in Hesperia, California; and because Plaintiff was located in Hesperia, California when Defendant enrolled her in, and thereafter charged her Payment Method on a monthly basis pursuant to, a Surprise Subscription.  Additionally, Defendant has, at all times relevant hereto, systematically and continually conducted, and continues to conduct, business in California, including within this judicial District, including through the promotion, marketing, and sale of its products.

**FACTUAL BACKGROUND**

**A.     Background On the Subscription-Based e-Commerce Industry**

14.     The e-commerce subscription model is a business model in which retailers provide ongoing goods or services "in exchange for regular payments from the customer."[1]  Subscription e-commerce services now target a wide range of customers and cater to a variety of specific interests.  Given the prevalence of online and e-commerce retailers, subscription e-commerce has grown rapidly in popularity in recent years.  Indeed, the "subscription economy has grown more than 400% over the last 8.5 years as consumers have demonstrated a growing preference for access to subscription services[.]"[2]  Analysts at UBS predict that the subscription economy will expand into a

---

[1] Core DNA, *How to Run an eCommerce Subscription Service: The Ultimate Guide* (May 19, 2020), https://www.coredna.com/blogs/ecommerce-subscription-services.

[2] Business Insider, *Taco Bell's taco subscription is rolling out nationwide — here's how to get it* (Jan. 6, 2022), https://www.businessinsider.com/taco-bell-subscription-launching-across-the-country-2022-1 (internal quotation marks omitted).

1   $1.5 trillion market by 2025, up from $650 billion in 2020.5F[3]  That constitutes an average annual

2   growth rate of 18%, which makes the subscription economy "one of the fastest-growing industries

3   globally."[4]

4        15.    The production, sale, and distribution of subscription-based products and services is

5   a booming industry that has exploded in popularity over the past few years.  According to *Forbes*,

6   "[t]he subscription e-commerce market has grown by more than 100% percent a year over the past

7   five years, with the largest retailers generating more than $2.6B in sales in 2016, up from $57.0M in

8   2011."[5]  Following 2016, market growth within the industry increased exponentially, reaching $650

9   billion in 2020.[6]  "As such, the financials of companies with subscription business models[] …

10  improved dramatically in 2020 thanks to limited revenue volatility and strong cash flow

[3]  *See* UBS, *Investing in digital subscriptions* (Mar. 10, 2021),
https://www.ubs.com/global/en/wealth-management/our-
approach/marketnews/article.1525238.html ("[A]t close to USD 650 billion in 2020, we expect the
subscription economy to expand into a USD 1.5 trillion market by 2025, implying an average annual
growth rate of 18%.").

*See also* Subscribed, *UBS Declares: It's Worth Investing in the Subscription Economy* (Apr. 17,
2021),   https://www.subscribed.com/read/news-and-editorial/ubs-declares-its-worth-investing-in-
the-subscription-economy; Business 2 Community, *The Subscription Economy Is Booming Right
Now. But Are You Reaping the Full Benefits?* (Oct. 7, 2021),
https://www.business2community.com/ecommerce/the-subscription-economy-is-booming-right-
now-but-are-you-reaping-the-full-benefits-02434851.

[4] UBS, *Investing in digital subscriptions* (Mar. 10, 2021), *supra* ("[Growth] was seen across many
areas, including e-commerce, video streaming, gaming, cloud-based applications, etc."); *see also* Juniper
Research, *Subscriptions For Physical Goods To Overtake Digital Subscriptions By 2025;
Growing To Over $263bn Globally* (Oct. 12, 2020),
https://www.juniperresearch.com/press/subscriptions-for-physical-goods-to-overtake
(acknowledging "the significant lead the digital sector has had in th[e] area[ of digital service
subscriptions]").

[5]  Forbes, *The State Of The Subscription Economy, 2018* (Mar. 4, 2018),
https://www.forbes.com/sites/louiscolumbus/2018/03/04/the-state-of-the-subscription-economy-
2018/#6ad8251a53ef.

[6] *See* UBS, *Investing in digital subscriptions* (Mar. 10, 2021), *supra*.

generation."[7]  Thus, "[t]he share prices of most subscription companies have performed well in recent years."[8]

16.    The expansion of the subscription e-commerce market shows no signs of slowing. "We're now in the subscriptions era, and the pandemic is accelerating its takeover.  During the COVID-19 lockdowns, many digital-based subscription business models fared well due to their promise of convenience and strong business continuity."[9]  According to *The Washington Post*, "[s]ubscriptions boomed during the coronavirus pandemic as Americans largely stuck in shutdown mode flocked to digital entertainment[.] … The subscription economy was on the rise before the pandemic, but its wider and deeper reach in nearly every industry is expected to last, even after the pandemic subsides in the United States."[10]

17.    However, as *The Washington Post* has noted, there are downsides associated with the subscription-based business model.[11]  While the subscription e-commerce market has low barriers and is thus easy to enter, it is considerably more difficult for retailers to dominate the market due to the "highly competitive prices and broad similarities among the leading players."[12]  In particular, retailers struggle with the fact that "[c]hurn rates are high, [] and consumers quickly cancel services that don't deliver superior end-to-end experiences."[13]  Yet, retailers have also recognized that, where

---

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), https://www.washingtonpost.com/business/2021/06/01/subscription-boom-pandemic/ (noting that "e-commerce and entertainment subscriptions to sites such as Netflix, Hulu and Disney Plus made headlines during the pandemic for soaring growth").

[11] The Washington Post, *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets* (Apr. 7, 2014), https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[12] McKinsey & Company, *Thinking inside the subscription box: New research on e-commerce consumers* (Feb. 2018), https://www.mckinsey.com/industries/technology-media-and-telecommunications/our-insights/thinking-inside-the-subscription-box-new-research-on-ecommerce-consumers#0.

[13] *Id.*

the recurring nature of the service, billing practices, or cancellation process is unclear or complicated, "consumers may lose interest but be too harried to take the extra step of canceling their membership[s]."[14]  As these companies have realized, "[t]he real money is in the inertia."[15]  As a result, "[m]any e-commerce sites work with third-party vendors to implement more manipulative designs."[16]  That is, to facilitate consumer inertia, a number of subscription e-commerce companies, including Defendant, "are now taking advantage of subscriptions in order to trick users into signing up for expensive and recurring plans.  They do this by intentionally confusing users with the design and flow of their website and apps, *e.g.*, by making promises of 'free trials' that convert after only a matter of days, and other misleading tactics," such as failure to fully disclose the terms of its automatic renewal programs.[17]

18.     To make matters worse, once enrolled in the subscription, "[o]ne of the biggest complaints consumers have about brand/retailers is that it's often difficult to discontinue a subscription marketing plan."[18]  Moreover, "the rapid growth of subscriptions has created a host of challenges for the economy, far outpacing the government's ability to scrutinize aggressive marketing practices and ensure that consumers are being treated fairly, consumer advocates say."[19]  For instance, numerous companies, including Defendant, have resorted to using "dark patterns" on

---

[14] The Washington Post, *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets* (Apr. 7, 2014), https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[15] *Id.*

[16] Business Insider, *A new study from Princeton reveals how shopping websites use 'dark patterns' to trick you into buying things you didn't actually want* (Jun. 25, 2019), https://www.businessinsider.com/dark-patterns-online-shopping-princeton-2019-6.

[17] TechCrunch, *Sneaky subscriptions are plaguing the App Store* (Oct. 15, 2018), https://techcrunch.com/2018/10/15/sneaky-subscriptions-are-plaguing-the-app-store/.

[18] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), *supra* ("'Subscription services are a sneaky wallet drain,' said Angela Myers, 29, of Pittsburgh. 'You keep signing up for things and they make it really hard to cancel.'"); *see also* New Media and Marketing, *The problem with subscription marketing* (Mar. 17, 2019), https://www.newmediaandmarketing.com/the-problem-with-subscription-marketing/.

[19] *Id.*

their e-commerce platforms.  A dark pattern is "a user interface carefully crafted to trick users into doing things they might not otherwise do, such as … signing up for recurring bills."[20]  Thus, although "Federal Trade Commission regulators are looking at ways to make it harder for companies to trap consumers into monthly subscriptions that drain their bank accounts[ and] attempting to respond to a proliferation of abuses by some companies over the past few years[,]"[21] widespread utilization of misleading dark patterns and deliberate omissions persist.

19.    Defendant successfully capitalized on this demand. In fact, Defendant's growth in revenue and subscriber count with respect to its Subscriptions coincides with a sharp decline in subscriber satisfaction as the Subscriptions and the platforms from which they operate have become riddled with "dark patterns."  Specifically, Defendant has used various types of dark patterns, including but not limited to "Roach Motel,"[22] "Misdirection,"[23] and "Forced Continuity,"[24] in order to prevent users from canceling their Subscriptions by way of adopting complex cancellation procedures to increase the friction in the subscription cancellation process.  Defendant's utilization of these dark patterns – especially in conjunction with its failure to fully disclose the terms of its automatic-renewal programs (discussed further below) – has led to a reduction in churn rates by making it next to impossible for subscribers to cancel their Subscriptions. It has further led to an

---

[20] UX Design, *Dark patterns in UX: how designers should be responsible for their actions* (Apr. 15, 2018), https://uxdesign.cc/dark-patterns-in-ux-design-7009a83b233c (quoting UX designer Harry Brignull (PhD Cognitive Science), who coined the term "Dark Patters" in August 2010).

[21] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), *supra*.

[22] "Roach Motel" refers to a "design [that] makes it very easy for [consumers] to get into a certain situation, but then makes it hard for [consumers] to get out of it (e.g. a subscription)." https://www.darkpatterns.org/types-of-dark-pattern/roach-motel.

[23] "Misdirection" is a type of dark pattern where a website's "design purposefully focuses [customers'] attention on one thing in order to distract [them] attention from another."  In many cases, "[w]hat's deceptive is the way [the website] presents [purchase] options: it uses misdirection to hide what is actually happening[.]"  https://www.darkpatterns.org/types-of-dark-pattern/misdirection.

[24] One example of "Forced Continuity," another type of dark pattern, is where customers' sign up for a "free trial with a service[ that] comes to an end and [their] credit card silently starts getting charged without any warning.  [The subscriber is] are then not given an easy way to cancel the automatic renewal."  https://www.darkpatterns.org/types-of-dark-pattern/forced-continuity.

increase in accidental or unintentional sign-ups by consumers for paid Subscriptions, in effect increasing subscriber count and, thus, Defendant's overall revenues from renewal fees.[25]

20.    As discussed below, Defendant has employed a host of dark patterns in its Website and social-media advertisements to lure and deceive millions of consumers into becoming and remaining enrolled in Surprise Subscriptions. That is the precise conduct that California's legislature sought to prevent in enacting California's Automatic Renewal Law.

**B.    California's Automatic Renewal Law**

21.    In 2010, the California Legislature enacted the Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq*., with the intent to "end the practice of ongoing charging of consumer credit or debit cards or third party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. & Prof. Code § 17600 (statement of legislative intent).

22.    The ARL makes it "unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to do any of the following:"

> (1) Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer. If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.

> (2) Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or

---

[25] *See* Gizmodo, *Pervasive 'Dark Patterns' Are Fooling People Into Signing Up for Services They Don't Want* (Sep. 15, 2022), https://gizmodo.com/dark-patterns-ui-cancel-subscription-1849542166 ("As much as you think you have full control of you and your wallet, it's getting increasingly difficult for anybody using an app or a website to avoid getting suckered into surrendering your money or personal information to misleading or tricky UI design. … Tech companies and online retailers [] lure users into signing up for subscription services while obscuring costs or charges, then making it difficult to actually cancel. Some dark patterns include confusing users in dense terms of service to obscure key limitations of products or junk fees attached to their use.")

continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.

(3) Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services.

Cal. Bus. & Prof. Code § 17602(a)(1)-(3).

23.     The ARL also requires that, prior to the completion of the initial order for the automatic renewal or continuous service, sellers must explain the price to be charged when the promotion or free trial ends.  *See* Cal. Bus. & Prof. Code § 17602(a)(1), *supra*.  If the initial offer is at a promotional price that is only for a limited time and will increase later, the seller must obtain consumer consent to the non-discounted price prior to billing.  *See id*.  Sellers must also notify consumers in the acknowledgment about how to cancel the free trial before they are charged.  *See* Cal. Bus. & Prof. Code § 17602(a)(3), *supra*.

24.     Section 17602(c) of the ARL further provides:

A business that makes an automatic renewal offer or continuous service offer **shall provide a toll-free telephone number, electronic mail address**, a postal address if the seller directly bills the consumer, **or it shall provide another cost-effective, timely, and easy-to-use mechanism for cancellation** that shall be described in the acknowledgment specified in paragraph (3) of subdivision (a).

Cal. Bus. & Prof. Code § 17602(c). (emphasis added).

25.     Additionally, the ARL also requires e-commerce sellers, doing business in California, to allow online cancellation of auto-renewing memberships or recurring purchases that were initiated online.  Specifically, Section 17602(d) provides:

[A] business that allows a consumer to accept an automatic renewal or continuous service offer online shall allow a consumer to terminate the automatic renewal or continuous service *exclusively online*, *at will*, *and without engaging any further steps that obstruct or delay the consumer's ability to terminate the automatic renewal or continuous service immediately*.

Cal. Bus. & Prof. Code § 17602(d)(1) (emphasis added).

26.    The ARL further specifies that a seller who provides an automatic offer "shall provide a method of termination that is online in the form of either of the following: (A) A prominently located direct link or button which may be located within either a customer account or profile, or within either device or user settings[; or] (B) By an immediately accessible termination email formatted and provided by the business that a consumer can send to the business without additional information." Cal. Bus. & Prof. Code § 17602(d)(1)(A)-(B).

27.    Section 17601(a) of the ARL defines the term "Automatic renewal" as a "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term."  Cal. Bus. & Prof. Code § 17601(a).

28.    Section 17601 of the ARL defines the term "Automatic renewal offer terms" as "the following clear and conspicuous disclosures: (1) That the subscription or purchasing agreement will continue until the consumer cancels.  (2) The description of the cancellation policy that applies to the offer.  (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known.  (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer.  (5) The minimum purchase obligation, if any."  Cal. Bus. & Prof. Code § 1760, *et seq.*

29.    The ARL defines "clear and conspicuous" or "clearly and conspicuously" meaning "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbol ls or other marks, in a manner that clearly calls attention to the language."  Cal. Bus. & Prof. Code § 17601.

30.    Finally, Section 17603 of the ARL provides that where a "business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent[,]" the material sent will be deemed "an unconditional gift to the consumer, who may use or dispose of the same in

any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business[.]" Cal. Bus. & Prof. Code § 17603.

31.     As alleged below, Defendant's practices on the Website and its social-media advertisements systematically violate Sections 17602(a)(l), 17602(a)(2), 17602(a)(3), 17602(c), and 17602(d) of the ARL.

**C.      Defendant's Business: The Subscription Enrollment Process**

32.     At all relevant times, Defendant offered, via the Website and through social-media advertisements (including on Instagram), woman's nutritional suppplement products to consumers.

33.     When a consumer purchases a product from Defendant on its website or through one of its social-media advertisements, Defendant surreptitiously enrolls the consumer in a Surprise Subscription that, unbeknownst to the consumer at the time, results in the consumer's Payment Method being assessed a recurring charge each and every month, in perpetuity (or until canceled by the consumer).

34.     Defendant's Surprise Subscriptions constitute automatic renewal and/or continuous service plans or arrangements for the purposes of Cal. Bus. & Prof. Code § 17601.

35.     Regardless whether a consumer purchases a product from Defendant on its website or through one of its social-media advertisements, the process of making the purchase – and becoming unknowingly enrolled in a Surprise Subscription – is substantially the same. Upon navigating the final screen of the checkout process (the "Checkout Page"), consumers are prompted to input their name, address, other contact information, and the details of their chosen Payment Method, and to finally click a giant green button at the bottom of the webpage to place their order.

36.     Defendant's Checkout Page fails to comply with the ARL in numerous respects.

37.     Prior to enrolling Plaintiff and other Californians in Surprise Subscriptions, the ARL required Defendant to "present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer." Cal. Bus. & Prof. Code § 17602(a)(1) (emphasis added). Under the ARL, a "clear and conspicuous" disclosure "means in larger type than

the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code §17601(3).

38.    On the Checkout Page, Defendant failed to present to Plaintiff or any member of the Class the terms of the Surprise Subscription in "larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." *See id.* Instead, the only statement provided on the Checkout Page concerning Surprise Subscriptions appeared in miniscule, inconspicuous font (much smaller than the surrounding text on the Checkout Page and without any emphasizing characteristics), ***below*** the giant green button that consumers must click to place an order – and would only become visible on a consumer's screen if the consumer scrolled down on the Checkout Page past the green button. A screenshot of the Checkout Page, after scrolling down on the page far enough to see the statement below the green button, is depicted below:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16



17    39.    Moreover, because a consumer navigating through the Checkout Page would have no

18    need to scroll below the green order-placement button in order to click that button to complete his or

19    her purchase, there is no reason to believe that any consumer who placed an order on the Checkout

20    Page ever saw the statement below the green button before placing an order.

21    40.    Simply put: the statement concerning the Surprise Subscription that appeared below

22    the green order-placement button was the exact opposite of the "clear and conspicuous" disclosure

23    that the ARL demands. *See* Cal. Bus. & Prof. Code § 17601(a)(1).

24    41.    And because this statement was neither "clear [nor] conspicuous," Defendant failed

25    to "first obtain[][any] consumer's affirmative consent to [any] agreement" with respect to the

26    Surprise Subscription, let alone any such agreement "containing the automatic renewal offer terms

27    or continuous service offer terms, including the terms of an automatic renewal offer or continuous

28    service offer that is made at a promotional or discounted price for a limited period of time." Cal.

Bus. & Prof. Code § 17602(a)(2). Indeed, even the statement appearing in miniscule font below the green button does not provide the exact amount of the recurring charges, the billing frequency, or a full description of the cancellation policy pertaining to the Surprise Subscription.

42.     Additionally, after enrolling a consumer in a Surprise Subscription, the ARL required Defendant to "provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." Cal. Bus. & Prof. Code § 17602(a)(3).

43.     After Plaintiff and members of the Class placed orders on the Checkout Page, Defendant sent them each the same pro forma e-mail regarding their purchase (the "Acknowledgment Email").

44.     During the time period relevant to this action, the form and content of the Acknowledgment Email sent by Defendant to each member of the putative Class was the same, in all material respects, as the Acknowledgment Email that Defendant sent to Plaintiff.

45.     The post-order Acknowledgment Emails that Defendant systematically sent to its customers (including to Plaintiff and all proposed Class members) uniformly failed to include "the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer," as required by Cal. Bus. & Prof. Code § 17602(a)(3). Specifically, Defendant's Acknowledgment Emails failed to adequately disclose: that the Surprise Subscription "will continue until the consumer cancels[,]" Cal. Bus. & Prof. Code § 17601(b)(1); a statement of "[t]he recurring charges that will be charged to the consumer's [Payment Method] as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, [and] if that is the case, and the amount to which the charge will change, Cal. Bus. & Prof. Code § 17601(b)(3); or "[t]he length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer[,]" Cal. Bus. & Prof. Code § 17601(b)(4).   As with the Checkout Page, disclosures of these required automatic renewal terms are either missing altogether, are deceptively incomplete, objectively inaccurate, and/or are inconspicuously buried in the tiny fine print at the bottom of the Acknowledgement Email.  Further, the Acknowledgment Emails fail to provide a toll-free telephone

number or describe another cost-effective, timely, and easy-to-use mechanism for cancellation of the Surprise Subscriptions, and, in fact, Defendant makes it exceedingly difficult and unnecessarily confusing for consumers to cancel Surprise Subscriptions. Accordingly, each of the Acknowledgment Emails that Defendant sent to Plaintiff and Class members violated sections 17602(a)(3), 17602(b), and 17602(c) of the ARL.

46.     In sum, during the relevant time period, Defendant's deficient pre- and post-purchase disclosures to Plaintiff and Class members concerning the Surprise Subscriptions were totally non-compliant with the ARL.

47.     Because Defendant charged Plaintiff's and its other customers' Payment Methods in violation of the ARL, all goods, wares, merchandise, and/or products sent to Plaintiff and Class members upon the automatic renewal of their continuous service agreements are deemed to be "unconditional gifts" pursuant to Cal. Bus. & Prof. Code § 17603.

48.     As a direct result of Defendant's unlawful conduct described above, Plaintiff and putative Class members have incurred substantial financial injury in the form of all monies withdrawn from their Payment Methods in connection with the Surprise Subscriptions in which they were surreptitiously enrolled by Defendant.

49.     As set forth in further detail below, Plaintiff's claims, which are based on Defendant's failure to comply with the ARL, arise under the "unlawful" prong of the UCL.  Further, because the Surprise Subscriptions were, by operation of law, "unconditional gifts" to Plaintiff and putative Class members (*see* Cal. Bus. & Prof. Code § 17603) – and thus Plaintiff and Class members already owned the goods, tools, and benefits of the subscriptions as their personal property at the time Defendant withdrew monies from their Payment Methods as consideration for access to the same, without any legal or contractual authority to do so – Plaintiff's claims are also based on Defendant's practice of charging consumers in exchange for unconditional gifts and arise under the "fraudulent" and "unfair" prongs of the UCL.  Additionally, Plaintiff brings this action against Defendant for violations of the CLRA and FAL, and conversion, unjust enrichment, negligent misrepresentation, and fraud.

**CLASS ACTION ALLEGATIONS**

50.     ***Class Definition***.  Plaintiff brings this action on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

> All persons in the United States who, within the applicable limitation period, up to and including the date of final judgment in this action, were charged a renewal fee for a Surprise Subscription by Defendant.

51.     Specifically excluded from the Class are Defendant and any entities in which Defendant have a controlling interest, Defendant's agents and employees, the judge to whom this action is assigned, members of the judge's staff, and the judge's immediate family.

52.     Plaintiff also seeks to represent a subclass, defined as follows (the "California Subclass"):

> All persons in California who, within the applicable limitation period, up to and including the date of final judgment in this action, were charged a renewal fee for a Surprise Subscription by Defendant.

53.     Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

54.     ***Numerosity.***  Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, the Class comprises at least millions of consumers.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

55.     ***Commonality and Predominance***.  Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to: (a) whether Defendant's Surprise Subscriptions constitute "Automatic renewal[s]" within the meaning of Cal. Bus. & Prof. Code § 17601(a); (b) whether Defendant failed to present the automatic renewal offer terms, or continuous service offer terms, in a clear and conspicuous manner before the subscription or purchasing agreement was fulfilled and in visual proximity to the request for consent to the offer, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (c) whether Defendant charged Plaintiff's and Class members' Payment Method for an automatic renewal or continuous service without first obtaining

their affirmative consent to the automatic renewal offer terms or continuous service offer terms in violation of Cal. Bus. & Prof. Code § 17602(a)(2); (d) whether Defendant failed to provide an acknowledgment that included the automatic renewal or continuous service offer terms, cancellation policy, and information on how to cancel in a manner that is capable of being retained by Plaintiff and the Class, in violation of Cal. Bus. & Prof. Code § 17602(a)(3); (e) whether the goods and services provided by Defendant are deemed an "unconditional gift" in accordance with Cal. Bus. & Prof. Code § 17603; (f) whether Defendant's conduct alleged herein violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, and/or California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (g) whether Defendant's conduct alleged herein constitutes conversion and/or unjust enrichment; (h) whether Plaintiff and the Class are entitled to damages and/or restitution; (i) whether Defendant should be enjoined from further engaging in the misconduct alleged herein; and (j) whether Plaintiff and the Class are entitled to attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

56.    ***Typicality.***   The claims of Plaintiff are typical of the claims of the Class in that Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to obtain Plaintiff's and the Class's affirmative consent to the automatic renewal offer terms or continuous service offer terms associated with the Surprise Subscriptions before charging their Payment Methods.

57.    ***Adequacy***.   Plaintiff will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests, and Plaintiff has retained counsel that have considerable experience and success in prosecuting complex class-actions and consumer-protection cases.

58.    ***Superiority***.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs,

conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

59.    Defendant has acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

60.    Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and members of the Class and will likely retain the benefits of its wrongdoing.

61.    Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

### CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**Violations of California's Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

62.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

63.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

64.    The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act[.]" Cal. Bus. & Prof. Code § 17200.  The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus. & Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

65.    As alleged herein, Defendant has committed unlawful and/or unfair business practices under the UCL by: (a) representing that Defendant's goods and services have certain characteristics that they do not, in violation of Cal. Civil Code § 1770(a)(5); (b) advertising goods and services with the intent not to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9); and (c) converting to Defendant's own use and benefit money that rightfully belongs to Plaintiff and the Class.

66.     Additionally, at all relevant times, Defendant has violated, and continues to violate, the UCL's proscription against engaging in unlawful and/or unfair conduct as a result of its violations of the ARL, Cal. Bus. & Prof. Code §§ 17600, *et seq.*  Specifically, Defendant failed, and continues to fail, to: (a) provide the auto-renewal terms associated with its Surprise Subscriptions "in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer," in violation of Cal. Bus. & Prof. Code § 17602(a)(1); (b) obtain the affirmative consent of Plaintiff and the Class to those terms before charging their Payment Methods, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); and (c) provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3).  Defendant also makes it exceedingly difficult and unnecessarily confusing for consumers to cancel Surprise Subscriptions, in violation of Cal. Bus. & Prof. Code § 17602(b).

67.     Each of these acts and practices constitutes an independent violation of the ARL, and thus an independent violation of the UCL.

68.     All products received from Defendant in violation of the ARL, Cal. Bus. Prof. Code §§ 17602, *et seq.*, constitute "unconditional gifts."  *See* Cal. Bus. Prof. Code § 17603.  As a direct and proximate result of Defendant's unlawful and/or unfair practices described herein, Defendant has received, and continues to hold, unlawfully obtained property and money belonging to Plaintiff and the Class in the form of payments made by Plaintiff and Class members for Surprise Subscriptions.  Defendant has profited from its unlawful and/or unfair acts and practices in the amount of those business expenses and interest accrued thereon.

69.     Defendant's acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

70.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

71. Defendant's acts, omissions, nondisclosures, and misleading statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

72. Plaintiff and the members of the Class have suffered a substantial injury in fact and lost money by virtue of Defendant's acts of unfair competition, which caused them to become enrolled in and assessed recurring charges for Surprise Subscriptions. Had Defendant complied with its disclosure obligations under the ARL, Plaintiff and members of the Class would not have made purchases from Defendant and thus would not have become enrolled in Surprise Subscriptions, or they would have canceled the Surprise Subscriptions in which Defendant enrolled them prior to the renewal of such subscriptions, so as not to incur additional fees. Thus, Plaintiff and members of the Class were damaged and have suffered economic injuries as a direct and proximate result of Defendant's unlawful and/or unfair business practices.

73. Defendant's violations have continuing and adverse effects because Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this unlawful course of conduct. The public and the Class are subject to ongoing harm because the unlawful and/or unfair business practices associated with Surprise Subscriptions are still used by Defendant today.

74. Plaintiff and the Class seek restitution pursuant to Cal. Bus. & Prof. Code § 17203 of all amounts that Defendant charged or caused to be charged to Plaintiff's and the Class's Payment Methods in connection with Surprise Subscriptions during the four years preceding the filing of this Complaint. Defendant should be required to disgorge all the profits and gains it has reaped and restore such profits and gains to Plaintiff and the Class, from whom they were unlawfully taken.

75. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and members of the Class seek a court order enjoining Defendant from such future misconduct, and any other such orders that may be necessary to rectify the unlawful business practices of Defendant.

76. Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and Class are inadequate because they are not equally prompt, certain, and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce

evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles Plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the UCL entail fewer elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

77.     Equitable relief is also appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from her purchase of the Subscription are determined to be an amount less than the total expenditure in connection with that subscription. Without compensation for the full price of the Surprise Subscription, Plaintiff would be left without the parity in purchasing power to which she is entitled.

**SECOND CLAIM FOR RELIEF**
**Conversion**

78.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

79.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

80.     As a result of charges made by Defendant to Plaintiff's and Class members' Payment Methods without authorization, as alleged above, Defendant has taken money that belongs to Plaintiff and the Class.

81.     The amount of money wrongfully taken by Defendant is capable of identification.

82.     Defendant engaged in this conduct knowingly, willfully, and with oppression, fraud, and/or malice within the meaning of Cal. Civil Code § 3294(c).

83.     As a result of Defendant's actions, Plaintiff and the Class have suffered damages.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THIRD CLAIM FOR RELIEF**
**Violations of California's False Advertising Law ("FAL"),**
**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**

84.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

85.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

86.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*., makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,  …in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

87.     Defendant committed acts of false advertising, as defined by § 17500, by intentionally making and disseminating statements to consumers in California and the general public concerning Defendant's products and services, as well as circumstances and facts connected to such products and services, which are untrue and misleading on their face and by omission, and which are known (or which by the exercise of reasonable care should be known) by Defendant to be untrue or misleading.  Defendant has also intentionally made or disseminated such untrue or misleading statements and material omissions to consumers in California and to the public as part of a plan or scheme with intent not to sell those services as advertised.

88.     Defendant's statements include but are not limited to representations and omissions made to consumers before and after enrollment in Defendant's Surprise Subscriptions regarding the terms of payment for and cancellation of a consumer's automatic payments.  Defendant is silent with regard to the terms of its Surprise Subscription and fails to place consumers on notice that they are agreeing to a recurring subscription in the first instance.  These omissions on the Checkout Page and the Acknowledgment Email constitute false and deceptive advertisements.

89.     Defendant's actions in violation of § 17500, as described herein, were false and misleading such that the general public is and was likely to be deceived.

90.     Plaintiff and the members of the Class were deceived by Defendant's statements and omissions made online when they made purchases from Defendant, and there is a strong probability that other California consumers and members of the public were also or are likely to be deceived as well.  Any reasonable consumer would be misled by Defendant's false and misleading statements and material omissions.  Plaintiff and other members of the Class did not learn of Defendant's cancellation and automatic payment policies until after they had already been unwittingly enrolled in and charged for Surprise Subscriptions.  They relied on Defendant's statements and omissions to their detriment.

91.     Plaintiff and the Class lost money or property as a result of Defendant's FAL violations because they would not have purchased products from Defendant and thus would not have become enrolled in Surprise Subscriptions on the same terms if the true facts were known about Defendant's practices and the terms of the Surprise Subscriptions.

92.     Plaintiff lacks an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiff and Class are inadequate because they are not equally prompt, certain, and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff fails to sufficiently adduce evidence to support an award of damages. Damages and restitution are not the same amount. Unlike damages, restitution is not limited to the amount of money Defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles Plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Legal claims for damages are not equally certain as restitution because claims under the FAL entail fewer elements. In short, significant differences in proof and certainty establish that any potential legal claim cannot serve as an adequate remedy at law.

93.     Equitable relief is also appropriate because Plaintiff may lack an adequate remedy at law if, for instance, damages resulting from the charges assessed for the Surprise Subscription are

determined to be an amount less than the total expenditure in connection with that subscription. Without compensation for the full price of the Surprise Subscription, Plaintiff would be left without the parity in purchasing power to which she is entitled.

**FOURTH CLAIM FOR RELIEF**
**Violations of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §§ 1750, *et seq.***

94.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

95.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

96.     Plaintiff and the members of the Class are "consumers" within the meaning of Cal. Civil Code § 1761(d) in that Plaintiff and the Class sought or acquired Defendant's goods and/or services for personal, family, or household purposes.

97.     Defendant's selection and/or subscription offers and the other products pertaining thereto are "goods" and/or "services" within the meaning of Cal. Civil Code § 1761(a) and (b). The purchases by Plaintiff and the Class are "transactions" within the meaning of Cal. Civil Code § 1761(e).

98.     The acts and practices of Defendant as described above were intended to deceive Plaintiff and the Class as described herein, and have resulted, and will result, in damages to Plaintiff and the Class. These actions violated, and continue to violate, the CLRA in at least the following respects: (a) Defendant's acts and practices constitute representations or omissions deceiving that the Subscriptions have characteristics, uses, and/or benefits, which they do not, in violation of Cal. Civil Code §1770(a)(5); and (b) Defendant's acts and practices constitute the advertisement of the goods in question without the intent to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9).

99.     Plaintiff and the Class suffered economic injury as a direct result of Defendant's misrepresentations and/or omissions because they were induced to purchase products and thus become enrolled in Surprise Subscriptions and/or pay renewal fees they would not have otherwise

purchased and/or paid had Defendant fully and clearly disclosed the terms associated with the Subscriptions.  Plaintiff and the Class would not have made purchases and thus would not have become enrolled in the Surprise Subscriptions, or they would have canceled their Surprise Subscriptions earlier, had Defendant fully and clearly disclosed the existence of and the terms associated with the Subscriptions.

100.    Plaintiff, on behalf of herself and all other members the Class, seeks an injunction prohibiting Defendant from continuing its unlawful practices in violation of the CLRA.

101.    In compliance with the provisions of California Civil Code § 1782, Plaintiff sent written notice to Defendant on [Date of CLRA Notice], informing Defendant of her intention to seek damages under California Civil Code § 1750.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter expressly stated that it was sent on behalf of Plaintiff and "all other persons similarly situated."  Accordingly, if Defendant fails to take corrective action within 30 days of receipt of the demand letter, Plaintiff will amend her complaint to include a request for damages as permitted by Civil Code § 1782(d) for Defendant's violations of the CLRA.

### FIFTH CLAIM FOR RELIEF
### Unjust Enrichment / Restitution

102.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

103.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

104.    Plaintiff and the Class conferred benefits on Defendant by purchasing products from Defendant and thereby becoming enrolled in and charged recurring fees for Surprise Subscriptions.

105.    Defendant has been unjustly enriched in retaining the revenues derived from the fees it charged to Plaintiff and the Class for Surprise Subscriptions.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant's failure to disclose the existence and material terms of the Surprise Subscriptions induced Plaintiff and the Class to make purchases

from Defendant and become enrolled in Surprise Subscriptions. These omissions caused injuries to Plaintiff and the Class because they would not have purchased products from Defendant or become enrolled in Surprise Subscriptions at all, or on the same terms, if the true facts were known.

106. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class for their unjust enrichment, as ordered by the Court.

**SIXTH CLAIM FOR RELIEF**
**Negligent Misrepresentation**

107. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

108. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

109. As discussed above, Defendant omitted, failed to disclose, and intentionally concealed from its advertisements and related statements regarding the Surprise Subscriptions material facts concerning billing, cancellation, and automatic payment terms, policies, and requirements pertaining to the Surprise Subscriptions.

110. At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

111. At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the Surprise Subscriptions and their associated terms.

112. The negligent misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase products from Defendant and become enrolled in Defendant's Surprise Subscriptions.

113. Plaintiff and Class members would not have purchased products from Defendant and would not have become enrolled in Defendant's Surprise Subscriptions if the true facts had been known.

114.    The negligent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

**SEVENTH CLAIM FOR RELIEF**
**Fraud**

115.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

116.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

117.    As discussed above, Defendant provided Plaintiff and Class members with false or misleading material information and failed to disclose material facts about the Surprise Subscriptions and their associated automatic renewal terms, including terms regarding Defendant's cancellation policy and billing practices and policies.  These misrepresentations and omissions were made by Defendant with knowledge of their falsehood.

118.    The misrepresentations and omissions made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase products from Defendant and become enrolled in Defendant's Surprise Subscriptions.

119.    The fraudulent actions of Defendant caused damage to Plaintiff and the members of the Class, who are entitled to damages and other legal and equitable relief as a result.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff Allison Blank, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.    For an order certifying the Class and naming Plaintiff as a representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b.    For an order declaring Defendant's conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d.    For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For an order of restitution and all other forms of equitable monetary relief;

g.    For injunctive relief as pleaded or as the Court may deem proper; and

h.    For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable.

Dated: October 23, 2025                         Respectfully submitted,

*/s/ Frank S. Hedin*
Frank S. Hedin
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com

**-and-**

Adrian Gucovschi (State Bar No. 360988)
**GUCOVSCHI LAW FIRM**
140 Broadway, Fl. 46
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com

*Counsel for Plaintiff and Putative Class*

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, Frank S. Hedin, declare as follows:

1.        I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a partner at Hedin LLP, counsel of record for Plaintiff Allison Blank in this action.  Plaintiff alleges that she is a citizen of California who resides in Hesperia, California. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.        The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that Defendant Primal Queen LLC regularly does business in the Central District of California, and a substantial portion of the events alleged in the Complaint, including the same misrepresentations, omissions, and injures as alleged herein, have occurred in this judicial District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Miami, Florida, on October 23, 2025.


*/s/ Frank S. Hedin*
Frank S. Hedin