**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Dillon D. Chen (SBN 311190)
750 B Street, Suite 2200
San Diego, CA 92101
Telephone:    619.489.6191
Facsimile:    619.821.2834
dillon.chen@nelsonmullins.com

Attorneys for Defendant
PRIMAL QUEEN, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLISON BLANK, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>   vs.<br><br>PRIMAL QUEEN LLC,<br><br>          Defendant. | Case No.:  5:25-cv-02810-KK-JC<br><br>**DEFENDANT PRIMAL QUEEN, LCC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**<br><br>Class Action Complaint filed: October 23, 2025 |

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION. ............................................................................................... 1

II.   FACTUAL AND PROCEDURAL SUMMARY ............................................... 1

    A.    Plaintiff Makes a Purchase on Primal Queen's Website ........................... 1

    B.    Plaintiff's Complaint and Allegations ...................................................... 3

III.  LEGAL STANDARD .......................................................................................... 4

IV.  ARGUMENT ....................................................................................................... 5

    A.    A Valid Arbitration Agreement Exists Between Plaintiff and Primal Queen ........ 5

    B.    Plaintiff Had Notice of and Assented to the Arbitration Agreement. ...................... 6

    C.    No Ground Exists to Revoke the Arbitration Provision. ......................................... 9

    D.    Plaintiff's Claims Are Within the Scope of the Arbitration Clause of the Agreement. ................................................................................................... 11

    E.    Plaintiff's Claims Should Be Stayed Pending Completion of Arbitration. .......... 12

V.    CONCLUSION.................................................................................................... 12

DEFENDANT PRIMAL QUEEN, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                          **Page(s)**

*Allied-Bruce Terminix Cos. v. Dobson*
   513 U.S. 265 (1995) ............................................................................................................9

*AT & T Mobility LLC v. Concepcion*
   563 U.S. 333 (2011) ........................................................................................................... 9

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*
   475 U.S. 643 (1986) .......................................................................................................... 16

*Berman v. Freedom Fin. Network LLC*
   30 F.4th 849 (9th Cir. 2022) ...........................................................................10, 11, 12, 13, 14

*Burris v. Discover Bank*
   No. 8:19-cv-1092, 2019 WL 9516076 (C.D. Cal. Sept. 20, 2019) ........................................ 16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*
   207 F.3d 1126 (9th Cir. 2000) ............................................................................................9

*Dean Witter Reynolds, Inc. v. Byrd*
   470 U.S. 213 (1985) ..........................................................................................................10

*Dickey v. Ticketmaster LLC*
   No. 18-cv-9052, 2019 WL 9096443 (C.D. Cal. Mar. 12, 2019)........................................... 10

*Duval v. Costco Wholesale Corp.*
   No. 22-cv-2338, 2023 WL 3852694 (N.D. Cal. June 5, 2023)...............................................9

*First Options of Chi., Inc. v. Kaplan*
   514 U.S. 938 (1995) ......................................................................................................... 10

*Hooper v. Jerry Ins. Agency*
   LLC, 675 F. Supp. 3d 1027 (N.D. Cal. 2023)........................................................................13

*Massage Envy Franchising, LLC v. Doe*
   339 So. 3d 481 (Fla. Dist. Ct. App. 2022) ...........................................................................11

*Meyer v. Uber Techs., Inc.*
   868 F.3d 66 (2d Cir. 2017).................................................................................................13

*Mortenson v. Bresnan Commc'ns, LLC*
   722 F.3d 1151 (9th Cir. 2013) ...........................................................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
   460 U.S. 1 (1983).................................................................................................................9

*Nguyen v. Barnes & Noble Inc.*
   763 F.3d 1171 (9th Cir. 2014) ........................................................................11, 12

*Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.*
   200 Cal. App. 3d 1518 (1988) .........................................................................16, 6

*Oberstein v. Live Nation Ent., Inc.*
   60 F.4th 505 (9th Cir. 2023) ...............................................................11, 12, 13, 14

*Patrick v. Running Warehouse, LLC*
   93 F.4th 468 (9th Cir. 2024) ............................................................................14, 15

*Peter v. Doordash, Inc.*
   445 F. Supp. 3d 580 (N.D. Cal. 2020) ..............................................................10, 13

*Quamina v. JustAnswer LLC*
   721 F. Supp. 3d 1026 (N.D. Cal. 2024) ...................................................................11

*Sanchez v. Valencia Holding Co.*
   LLC, 61 Cal. 4th 899 (2015) ....................................................................................15

*Sellers v. JustAnswer LLC*
   73 Cal. App. 5th 444 (2021) .............................................................................11, 12

*Simula, Inc. v. Autoliv, Inc.*
   175 F.3d 716 (9th Cir. 1999) ......................................................................................9

*Smith v. Spizzirri*
   144 S. Ct. 1173 (2024) ..............................................................................................17

*Szetela v. Discover Bank*
   97 Cal. App. 4th 1094 (2002) ...................................................................................15

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*
   363 U.S. 574 (1960) ..................................................................................................10

*Windsor Mills, Inc. v. Collins & Aikman Corp.*
   25 Cal. App. 3d 987 (1972) .......................................................................................11

**Statutes**

9 U.S.C. § 2 ...................................................................................................................9

9 U.S.C. § 3 ...............................................................................................................6, 17

9 U.S.C. § 4 ...................................................................................................................9

**Other Authorities**

Cal. Bus. Prof. Code. §§ 17600, *et seq* ............................................................6

DEFENDANT PRIMAL QUEEN, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

## I.  **INTRODUCTION**

Defendant Primal Queen, LLC ("Primal Queen") may compel arbitration of Plaintiff Allison Blank's ("Plaintiff") claims because Primal Queen's Terms of Service ("Terms") agreed to by Plaintiff contain a valid, written arbitration clause ("Arbitration Clause") requiring that the claims alleged by Plaintiff in this case be submitted to binding, individual arbitration.  Despite having agreed to arbitrate all claims between Plaintiff and Primal Queen and despite having additionally waived her right to a jury trial and class action lawsuit—Plaintiff brought this putative class action, in court, against Primal Queen, asserting, in part, that Primal Queen violated California's Automatic Renewal Law ("ARL"), Cal. Bus. Prof. Code. §§ 17600, *et seq.*

Primal Queen's Arbitration Clause and its class action waiver set forth in the Terms are fully enforceable under Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, *et seq.*, and this dispute plainly falls within the scope of claims to be arbitrated under the Terms.  Accordingly, based on the Terms, Primal Queens moved to compel arbitration of Plaintiff's claims and to stay this action pending the completion of such arbitration.

## I.  **FACTUAL AND PROCEDURAL SUMMARY**

### A.  **Plaintiff Makes a Purchase on Primal Queen's Website**

Primal Queen is an online purveyor of dietary supplements registered in Cape Coral, Florida.  Declaration of Abdurahimbek Shodmonov ¶ 3 ("Shodmonov Decl.").  Primal Queen maintains an online store (the "Online Store") which allows users to view and/or purchase Primal Queen products. *See id.* ¶ 4.  One of Primal Queen's products is the Primal Queen Starter Kit (the "Starter Kit"). *See id.* ¶ 5.  The Starter Kit includes a sixty-capsule supply of supplements, a storage jar, a capsule keychain, and a bracelet. *See id.*  Users can elect to purchase the Starter Kit as a stand alone one-time purchase, or as a subscription service ("Primal Queen Subscription"). *See id.* ¶ 6.  A Primal Queen Subscription is a monthly subscription service whereby a user signs up to have a one-month supply of Primal Queen supplements sent to them in exchange for a

DEFENDANT PRIMAL QUEEN, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

monthly subscription fee. *See id.* ¶ 7. The Starter Kit is the only product offered by Primal Queen that has the option for users to sign up for the Primal Queen Subscription. *See id.* ¶ 8.

A user can access Primal Queen's Online Store through Primal Queen's website, https://primalqueen.com. *See id.* ¶ 9. A link to Primal Queen's website and Online Store can be found on Primal Queen's social media accounts, including Instagram. *See id.* A user that intends to purchase a Primal Queen product through the Online Store must first add the product to their cart, select "check out", and enter payment and contact information (*i.e.*, name, address, phone number). *See id.* ¶ 15. Prior to making the purchase, a user must click the "Pay now" button. *See id.* ¶ 16. Above this button, the following text appears in black letter, set against a white background:

By completing my purchase, I agree to the <u>terms of service</u> and <u>privacy policy</u>.

*See id.* ¶ 17. Both the Terms and privacy policy are hyperlinked and when clicked on by a user will bring a user to the respective policy on Primal Queen's website. *See id.* ¶ 18.

The Terms published on Primal Queen's website were last updated and effective as of August 26, 2024. *See id.* ¶ 17. In the first paragraph of the Terms, the following text appears:

Please read these [Terms] carefully before using the primalqueen.com website ("the Service") operated by Primal Queen ("us", "we", or "our"). Your access to and use of the Service is conditioned upon your acceptance of and compliance with these Terms. These Terms apply to all visitors, users and others who wish to access or use the Service. By accessing or using the Service you agree to be bound by these Terms. If you disagree with any part of the terms then you do not have permission to access the Service.

*See id.* ¶ 18, Ex. C. In addition, under the section titled "Arbitration & Class Action Waiver" the following text appears in bolded, capitalized letter:

**EXCEPT WHERE PROHIBITED BY LAW, YOU AGREE THAT ANY CLAIM THAT YOU MAY HAVE AGAINST Primal Queen, OR ITS PARENTS, SUBSIDIARIES, AFFILIATES, OWNERS, EMPLOYEES, AND/OR REPRESENTATIVES, MAY ONLY BE PURSUED AND BROUGHT IN FINAL AND BINDING CONFIDENTIAL ARBITRATION. YOU ACKNOWLEDGE AND AGREE THAT YOU MAY ONLY BRING A CLAIM IN YOUR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF (LEAD OR OTHERWISE) OR CLASS MEMBER IN ANY PURPORTED**

DEFENDANT PRIMAL QUEEN, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

**CLASS OR REPRESENTATIVE PROCEEDING. YOU FURTHER AGREE THAT THE ARBITRATION MAY NOT CONSOLIDATE PROCEEDINGS OR CLAIMS OR OTHERWISE PRESIDE OVER ANY FORM OF A REPRESENTATIVE OR CLASS PROCEEDING.**

*See id.* The Arbitration Clause further states:

> This arbitration provision sets forth the terms and conditions of our agreement to final and binding confidential arbitration and is governed by and enforceable under the [FAA], 9 U.S.C. §§ 1-16, as amended.
>
> …
>
> In the event you elect to proceed with binding arbitration, you shall provide written notice to Primal Queen by registered or certified mail and shall describe in such notice, with reasonable particularity, the nature and basis of such claim and the total amount of the claim. The written notice shall be sent to: 5830 E 2nd St, Ste 7000 #3989 Casper, Wyoming 82609 US. If the parties are unable to resolve the dispute arising from the claim by good faith negotiations within the thirty (30)-day period following receipt of the written notice, either party may initiate binding arbitration pursuant to the terms and conditions set forth herein.
>
> …
>
> Separate and apart from the agreement to arbitrate set forth above and to the extent permitted by law, you hereby independently (i) waive any right to bring or participate in any class action against Primal Queen and (ii) acknowledge that this class action waiver is material and essential to the arbitration of any disputes between the parties and non-severable from the agreement to arbitration claims.

*See id.*

## B. Plaintiff's Complaint and Allegations

On or about December 10, 2024, Plaintiff visited Primal Queen's website via Instagram and purchased Primal Queen's Starter Kit. *See id.* ¶ 9. Plaintiff alleges that following her purchase and "unbeknownst to her at the time" Plaintiff was enrolled in a "Surprise Subscription". *See id.* Further, Plaintiff alleges that Primal Queen "assessed Plaintiff's Payment Method a recurring charge of $47.21 each month" until "Plaintiff canceled her Surprise Subscription". *See id.* In addition, Plaintiff alleges that her experience with Primal Queen is not unique and thus brings her

Complaint on behalf of herself and of a class of similarly situated individuals.  *See id.* ¶ 50.

As a result, Plaintiff brings seven claims for relief: (1) violation of California's Unfair Competition Law ("UCL"); (2) conversion; (3) violation of California's False Advertising Law ("FAL"); (4) violation of California's Consumer Legal Remedies Act ("CLRA"); (5) unjust enrichment/ restitution; (6) negligent misrepresentation; and (7) fraud.  *See id.* ¶¶ 62-119.

## II.   <u>LEGAL STANDARD</u>

The FAA governs Primal Queen's arbitration agreement because the underlying contract involves a transaction in interstate commerce. *See* 9 U.S.C. § 2; *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74, 281 (1995). Courts regularly find that the FAA applies where, as here, an agreement involves transactions and communications on the internet. *E.g.*, *Duval v. Costco Wholesale Corp.*, No. 22-cv-2338, 2023 WL 3852694, at *2 (N.D. Cal. June 5, 2023) (collecting cases).

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted). It is well established that the FAA "permits a party 'aggrieved by the alleged . . . refusal of another to arbitrate' to petition any federal district court for an order compelling arbitration in the manner provided for in the agreement." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting 9 U.S.C. § 4). The threshold to show "arbitrability is not high," *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*,

470 U.S. 213, 218 (1985) (citation omitted).

A party seeking arbitration must prove the existence of an agreement to arbitrate by a preponderance of the evidence. *E.g.*, *Peter v. Doordash, Inc.*, 445 F. Supp. 3d 580, 585 (N.D. Cal. 2020). By the same token, because "arbitration is favored, those parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable." *Mortenson v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013). When deciding a motion to compel arbitration, like the standard on summary judgment, a court "may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party." *Dickey v. Ticketmaster LLC*, No. 18-cv-9052, 2019 WL 9096443, at *3 (C.D. Cal. Mar. 12, 2019) (internal quotation marks omitted).

## III.   **ARGUMENT**

### A. **A Valid Arbitration Agreement Exists Between Plaintiff and Primal Queen**

Where the FAA governs, the Court's role is limited to "'determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue.'" *Berman v. Freedom Fin. Network LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citation omitted). Whether the parties formed an agreement to arbitrate is "a matter of contract." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). To make this determination, courts "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

As for which state's laws apply to the present case, Plaintiff is a California resident and Primal Queen is incorporated in Florida.  *See* Compl. ¶ 9; *see also* Shodmonov Decl. ¶ 3. Meanwhile, the Terms merely provide that the Arbitration Clause "is governed by and enforceable under the [FAA and] 9 U.S.C. §§ 1-16", which, as noted above, points to state contract law to determine issues of contract formation.  *See* Shodmonov Decl. ¶ 18, Ex. C.  The Court need not resolve at this stage which state's substantive law applies to this dispute because California and Florida law do not conflict on contract formation; under either state's law, "a contract cannot be formed without the parties' mutual assent to the essential terms of the agreement." *Massage Envy*

DEFENDANT PRIMAL QUEEN, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

*Franchising, LLC v. Doe*, 339 So. 3d 481, 484 (Fla. Dist. Ct. App. 2022); *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992 (1972) ("[C]onsent to, or acceptance of, the arbitration provision [is] necessary to create an agreement to arbitrate."); *accord Quamina v. JustAnswer LLC*, 721 F. Supp. 3d 1026, 1037 (N.D. Cal. 2024) (finding "no conflict" between California and Florida law "on the issue of internet contract formation").[1]   To form a contract under California law, "there must be actual or constructive notice of the agreement[,] and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir. 2023). "These elemental principles of contract formation apply with equal force to contracts formed online"; and so, "if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed." *Berman*, 30 F. 4th at 855–56.

**B. Plaintiff Had Notice of and Assented to the Arbitration Agreement.**

With respect to online contracts, actual notice can be shown through the use of "clickwrap" agreements, whereby a user is presented with terms and is required to affirmatively interact with them, such as by "checking a box explicitly stating 'I agree' in order to proceed." *Id.* at 856 (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–1176 (9th Cir. 2014) (discussing "clickwrap" agreements)). By contrast, a so-called "browsewrap" agreement is one in which a user is not required "to manifest assent to the terms and conditions expressly" but rather "gives his assent simply by using the website." *Nguyen*, 763 F.3d at 1176 (internal quotation marks and citation omitted). A third variant—a middle ground of sorts—are "sign-in wrap" agreements, which "do include a textual notice indicating the user will be bound by the terms, but . . . do not require the consumer to review those terms or to expressly manifest their assent to those terms by checking a box or clicking an 'I agree' button." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 471 (2021). Rather, users must "click[] *some other* button that they would otherwise need to click to continue with their transaction or their use of the website—most frequently, a button that allows

---

[1] Accordingly, this Motion will predominantly rely upon authority applying California contract law.

DEFENDANT PRIMAL QUEEN, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF ITS MOTION TO COMPEL ARBITRATION

the consumer to 'sign in' or 'sign up' for an account." *Id.* (emphasis in original); *see also id.* at 463–64 (distinguishing between "click-wrap," "browse-wrap," and "sign-in wrap" agreements). Under the latter two variants of online contractual agreements, absent proof that the user had actual notice, a court will find an enforceable contract based on inquiry notice if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856.

    ***Reasonably Conspicuous Notice.*** "[T]he full context of the transaction is critical to determining whether a given textual notice is sufficient to put an internet consumer on inquiry notice of contractual terms." *Sellers*, 73 Cal. App. 5th at 477. For a notice to be deemed reasonably conspicuous, it "'must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.'" *Oberstein*, 60 F.4th at 515 (quoting *Berman*, 30 F. 4th at 856). Users "cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound." *Nguyen*, 763 F.3d at 1179. Accordingly, if a hyperlink is employed, "the fact that a hyperlink is present must be readily apparent." *Berman*, 30 F.4th at 857.

    Here, the totality of the circumstances demonstrate that Primal Queen's Terms were reasonably conspicuous and that they provided notice to Plaintiff when she accessed Primal Queen's website and purchase Primal Queen's Starter Kit.  As the screenshot of the check-out window indicates, when make a purchase on the Online Store, prior to clicking "Pay now", Plaintiff was confronted with plainly readable text stating that "[b]y completing my purchase," she "agree[d] to [Primal Queen's] terms of service and privacy policy."  *See* Shodmonov Decl. ¶ 16 and Ex. B. The black text contrasted clearly with the page's purple background and was "conspicuously displayed directly above . . . the action button," *Oberstein*, 60 F.4th at 516, which was labeled "Pay now," *See* Shodmonov Decl. ¶ 18, Ex. C.  Moreover, the pop-up is "uncluttered and wholly visible," and the phrase "terms of service" is presented in contrasting, hyperlinked, and underlined text, which is proximate to—indeed, sandwiched between—*both* the action button and

the fields into which Plaintiff entered her payment and contact information.  *See Peter*, 445 F. Supp. 3d at 586 (finding notice reasonably conspicuous where the text was "uncluttered and wholly visible," "contrast[ed] clearly with the background," and was situated in close proximity to the action button); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (finding reasonably conspicuous notice where the screen was "uncluttered"; the notice "text, including the hyperlinks to the Terms and Conditions and Privacy Policy, appear[ed] directly below the buttons for registration"; the "entire screen [was] visible at once"; "and the user d[id] not need to scroll beyond what is immediately visible to find notice of the Terms of Service"); *Hooper v. Jerry Ins. Agency, LLC*, 675 F. Supp. 3d 1027, 1035 (N.D. Cal. 2023) (same, relying on *Meyer* and *Peter*); *compare Berman*, 30 F.4th at 856–57 (finding lack of notice where "text disclosing the existence of the terms and conditions. . . [was] printed in a tiny gray font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it [was] barely legible to the naked eye").

When making her purchase on the Online Store, Plaintiff was presented with a direct, clear, and simple process for accessing the Terms, which establishes that she had reasonable notice of that agreement and its Arbitration Clause therein. *See Oberstein*, 60 F.4th at 516 (finding that "a reasonable user would have seen the notice and been able to locate the Terms via hyperlink"); *Peter*, 445 F. Supp. 3d at 587.  A single click on the conspicuous "terms of service" hyperlink directed a user to the full text of the Terms, which declare prominently at the outset that it is a contract that contains an arbitration provision and a class action waiver.  *See Oberstein*, 60 F.4th at 516.  Under the totality of the circumstances, it is incontrovertible that, by making a purchase on the Online Store, Plaintiff had ample opportunity to access the contractual terms requiring binding, individual arbitration, and thus was reasonably on notice of their existence and applicability.

***Manifestation of Assent.***  "A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Oberstein*, 60 F.4th at 515 (quoting *Berman*,

30 F.4th at 857). "[T]he notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Id.* (quoting *Berman*, 30 F.4th at 858). Indeed, "all that is required" is "that the notices at issue explicitly alert the user that by creating an account," "signing in," "and proceeding to the next page, the user 'agrees to our Terms of Use.'" *Id.* at 517.

Here, as noted *supra*, the notice found in the pop-up clearly states that "[b]y completing [her] purchase," a user agrees to the Terms. *See* Shodmonov Decl. ¶ 18, Ex. C ("By completing my purchase, I agree to the <u>terms of service</u> and <u>privacy policy</u>."). Thus, in manually completing her purchase on the Online Store, Plaintiff reasonably manifested assent to the Terms and the Arbitration Clause and class action waiver contained therein. *See Oberstein*, 60 F.4th at 515–16, 17 (finding manifestation of assent where notice text stating that "[b]y continuing past this page, you agree to the Terms of Use" appeared "directly above" the "Sign in" button"); *compare id.*, *with Berman*, 30 F.4th at 858 ("[The] notice defect could easily have been remedied by including language such as, 'By clicking the Continue >> button, you agree to the Terms & Conditions.'" (citation omitted)). Had Plaintiff decided that she did not wish to be bound by the Terms, she could have not completed her purchase. However, Plaintiff did complete her purchase on Primal Queen's Online Store on December 10, 2024. *See* Compl. ¶ 9. Because Plaintiff was explicitly and conspicuously informed that by completing her purchase she was affirming that she would be bound by the Terms, Plaintiff unambiguously manifested assent to them.

In sum, the full context of the circumstances and transaction show that, by her affirmative actions in completing her purchase on Primal Queen's Online Store, Plaintiff reasonably manifested her assent to the Terms and the Arbitration Clause contained therein. *See, e.g.*, *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024).

### C. No Ground Exists to Revoke the Arbitration Provision

Under California law, an arbitration agreement may not be revoked unless it is both procedurally and substantively unconscionable. *See Patrick*, 93 F.4th at 479. The party opposing arbitration has the burden of proving that the arbitration provision is unconscionable. "The

procedural element focuses on two factors: 'oppression' and 'surprise.'" *Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.*, 200 Cal. App. 3d 1518, 1534 (1988). Whereas "[o]ppression arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice," "[s]urprise" contemplates "the extent to which the terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* But procedural and substantive "unconscionability 'need not be present in the same degree. Essentially a sliding scale is invoked . . . . In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Patrick*, 93 F.4th at 479 (quoting *Sanchez v. Valencia Holding Co.*, LLC, 61 Cal. 4th 899, 910 (2015) (cleaned up)). The substantive element of unconscionability "addresses the fairness of the term in dispute," *Id.* (quoting *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1101 (2002)), and typically "involves contract terms that are so one-sided as to 'shock the conscience,' or that impose harsh or oppressive terms," *Szetela*, 97 Cal. App. 4th at 1101 (internal quotation marks and citation omitted).

Plaintiff cannot show that the Arbitration Clause is unconscionable as she has not, in her Complaint, alleged any facts which could support a finding of either procedural or substantive unconscionability.  To the contrary, all evidence points towards her voluntary engagement with Primal Queen, born of her desire to purchase Primal Queen's Starter Kit, thus reflecting her understanding of the applicable Terms to such purchase.  Indeed, Plaintiff was apprised in the Terms of the proper procedure for opting out of the Arbitration Clause—not using Primal Queen's website—yet intentionally chose to make a purchase nonetheless. Shodmonov Decl. ¶ *See id.* ¶ 16, Ex. B ("By accessing or using [Primal Queen's website] you agree to be bound by these Terms. If you disagree with any part of the terms then you do not have permission to access the Service."); *see also* Compl. ¶ 9.

Accordingly, Plaintiff has failed to shoulder her burden of setting forth evidence that would "shock the conscience" and support a finding of unconscionability.  *See Szetela*, 97 Cal. App. at 1101. Furthermore, as noted *supra*, the Terms include an Arbitration & Class Action Waiver

DEFENDANT PRIMAL QUEEN, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

section, and the Arbitration Clause itself (and class action waiver) are presented under a section heading that states, "Arbitration & Class Action Waiver" followed by all-capitalized, bolded text notifying Plaintiff of the Arbitration Clause information.  *See* Shodmonov Decl. ¶ 19.  On these facts, Plaintiff simply cannot claim "surprise" based on the inclusion of the Arbitration Clause in the agreement. *See Nunes Turfgrass*, 200 Cal. App. 3d at 1535.

### D. Plaintiff's Claims Are Within the Scope of the Arbitration Clause of the Agreement.

Once a court finds that an agreement to arbitrate exists, the "presumption of arbitrability" effected by the FAA mandates that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

The Arbitration Clause of the Terms contains language reflecting the broad scope of claims that must be resolved between the parties exclusively through binding, individual arbitration—but only after the parties first exhaust an internal, mandatory, and informal dispute resolution process (the "Mandatory Informal Dispute Resolution Process").[2]  Here, the Arbitration Clause in the Terms is valid, broadly written, and directly applicable to Plaintiff's claims, which arise solely out of Plaintiff's purchase of the Starter Kit via Primal Queen's Online Store. The Terms state that the agreement to arbitrate extends to any "**CLAIM THAT YOU MAY HAVE AGAINST Primal Queen, OR ITS PARENTS, SUBSIDIARIES, AFFILIATES, OWNERS, EMPLOYEES, AND/OR REPRESENTATIVES** …"  *See* Shodmonov Decl. ¶ 18, Ex. C.  Plaintiff's claims are premised on her use of Primal Queen's website and subsequent purchase thereto.  As such, her cause of action plainly falls within the broad language of the Arbitration Clause.  Accordingly, Plaintiff should be compelled to honor the Terms and arbitrate her claims against Primal Queen according to the provisions and procedures established therein. *Cf., e.g.*, *Burris v. Discover Bank*, No. 8:19-cv-1092, 2019 WL 9516076, at *3 (C.D. Cal. Sept. 20, 2019) (finding "especially broad"

---

[2] By failing to provide advance notice to Primal Queen of the nature of her dispute and engage in good faith negotiations to reach a resolution, Plaintiff has violated the express terms of the Terms, which, as noted *supra*, provide that the Mandatory Informal Dispute Resolution Process "is a condition precedent" to any formal arbitral proceeding.  *See* Shodmonov Decl. ¶ 22-23.

language in an arbitration provision addressed to disputes "arising out of or relating to" an account "or any other dispute between" the parties to be enforceable).

**E. Plaintiff's Claims Should Be Stayed Pending Completion of Arbitration.**

Under section 3 of the FAA, a court, "upon being satisfied that the issue involved . . . is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. Since the Terms clearly and unambiguously require that Plaintiff's claims be sent to arbitration on an individual basis, the Court should stay this case and compel arbitration. *See Smith v. Spizzirri*, 144 S. Ct. 1173, 1176 (2024) (holding that when arbitration is compelled under the FAA and a party requests a stay, Section 3 of the FAA requires the court to stay the case and should not dismiss it); 9 U.S.C. § 3.

**IV.    CONCLUSION**

Accordingly, Primal Queen respectfully requests that this Court enter an order compelling Plaintiff to arbitrate this action against Primal Queen pursuant to the Arbitration Clause in the Terms and stay the instant action pending completion of arbitration.

Dated: January 29, 2026

NELSON MULLINS, RILEY & SCARBOROUGH LLP

/s/ *Dillon Chen*
Dillon Chen

Attorneys for Defendant
PRIMAL QUEEN, LLC

## **CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 11-6.2, the undersigned, counsel of record for Defendant Primal Queen LLC, certifies that this brief contains 4314 words, which complies with the word limit under L.R. 11-6.1.

Dated this 29 January 2026.

By:     */s/ Dillon Chen*
        Dillon Chen

**CERTIFICATE OF COMPLIANCE**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 29, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and I served a copy of the foregoing pleading on all counsel for all parties, via the CM/ECF system and/or mailing same by United States Mail, properly addressed, and first class postage prepaid, to all counsel of record in this matter.

By:     */s/ Dillon Chen*
        Dillon Chen

**CERTIFICATE OF SERVICE**