**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Dillon D. Chen (SBN 311190)
750 B Street, Suite 2200
San Diego, CA 92101
Telephone:   619.489.6191
Facsimile:   619.821.2834
dillon.chen@nelsonmullins.com

Attorneys for Defendant
PRIMAL QUEEN, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLISON BLANK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PRIMAL QUEEN LLC,<br><br>Defendant. | Case No.: 5:25-cv-02810-KK-JC<br><br>**DEFENDANT PRIMAL QUEEN, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES FILED IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF'S PUTATIVE CLASS ACTION ALLEGATIONS**<br><br>Class Action Complaint filed: October 23, 2025 |

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................1

II. FACTUAL & PROCEDURAL BACKGROUND ...........................................................2

III. LEGAL STANDARD................................................................................................4

IV. ARGUMENT............................................................................................................4

    a. This Court Will Lack Personal Jurisdiction Over the Class .......................................4

    b. Plaintiff's Purported Class and California Subclass Are Unascertainable ..................6

    c. Individual Questions of Fact Predominate Over Common Questions of Law or Fact 8

V. CONCLUSION.........................................................................................................11

i

DEFENDANT PRIMAL QUEEN LLC'S MEMORANDUM OF POINTS AND AUTHORITIES FILED IN SUPPORT OF ITS MOTION TO STRIKE CLASS ACTION ALLEGATIONS

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ayla, LLC v. Alya Skin Pty. Ltd.*,
11 F. 4th 972 (9th Cir., 2021)..................................................................................5

*Ambrosio v. Progressive Preferred Ins. Co.*,
154 F.4th 1107 (9th Cir., 2025).........................................................................9, 10

*Bowerman v. Field Asset Services, Inc.*,
60 F.4th 459 (9th Cir. 2023) ....................................................................................8

*Brazil v. Dell Inc.*, 585 F.Supp. 2d 1158
 (N.D. Cal., 2008) .....................................................................................................7

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*,
582 U.S. 255 (2017)..............................................................................................5, 6

*Cancinos v. Lockheed Martin Corp.*,
2025 WL 806323 (C.D. Cal.) ..................................................................................4

*Corr. USA v. Dawe*,
504 F.Supp. 2d 924 (E.D. Cal. 2007) ......................................................................4

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)..................................................................................................4

*Denney v. Deutsche Bank AG*,
43 F.3d 253 (2d Cir.2006) ........................................................................................7

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011)..................................................................................................5

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) .................................................................................................7

*Hovsepian v. Apply, Inc.*,
2009 WL 5069144 (N.D. Cal., 2009) ..................................................................7, 8

*Johnson v. Pluralsight, LLC*,
728 Fed. Appx. 674 (9th Cir. 2018) .....................................................................6, 8

*Lopez v. Stages of Beauty, LLC*,
307 F. Supp. 3d. 1058 (S.D. Cal., 2018) .................................................................7

*Lujan v. Defenders of Wildlife*,
2025504 U.S. 555 (1992)..........................................................................................7

*Moser v. Benefytt, Inc.*,
8 F. 4th 872 (9th Cir., 2021)..................................................................................................5, 6

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) ........................................................................................................7

*Sanders v. Apple Inc.*,
672 F.Supp. 2d. 987 (2009)................................................................................................4, 7, 8

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .....................................................................................................................7

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) .....................................................................................................................9

*Valentino v. Carter-Wallace, Inc.*,
97 F.3d 1227 (9th Cir., 1996) .....................................................................................................9

*Zinser v. Accufix Rsch. Inst., Inc.*,..............................................................................................9, 11
253 F.3d 1180 (9th Cir., 2001)

**Statutes**

Cal. Bus. Prof. Code §§ 17600, *et seq* ...............................................................................................1

**Rules**

C.D. Cal. L.R. 23-3 ...............................................................................................................................1

Fed. R. Civ. P. 12(f) ........................................................................................................................1, 4

Fed. R. Civ. P. 23 ............................................................................................................1, 2, 4, 7, 8, 9

**Publications**

7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, Federal
  Practice and Procedure § 1778 at 535–39 (2d ed.1986)................................................................9

## I.  INTRODUCTION

Defendant Primal Queen, LLC ("Primal Queen") moves to strike Plaintiff Allison Blank's ("Plaintiff") class allegations pursuant to Federal Rules of Civil Procedure[1] 23, Local Rule 23-3, and Rule 12(f).  Plaintiff brings the present action against Primal Queen on behalf of herself, the "Class", and "California Subclass" (defined herein) alleging that Primal Queen had engaged in an unlawful automatic renewal scheme in violation of California Automatic Renewal Law ("ARL"), Cal. Bus. Prof. Code §§ 17600, *et seq.*, which Plaintiff refers to as "Surprise Subscriptions". Specifically, Plaintiff alleges that while purchasing Primal Queen's Starter Kit product, Primal Queen's disclosures at its checkout page (the "Checkout Page") did not provide the proper notice that Plaintiff and members of her alleged classes were signing up for a monthly subscription service, thus resulting in a Surprise Subscription.  Primal Queen respectfully requests that this Court strike Plaintiff's class allegations concerning the Class and California Subclass for three reasons: this Court will lack personal jurisdiction over the Class, if it is certified, the Class and California Subclass are unascertainable, and Plaintiff's alleged common issues of law and fact are predominated by individualized inquiries.

First, this Court lacks personal jurisdiction over the Class because Primal Queen is not incorporated in California, nor maintains a principal place of business there.  In addition, non-California residents in the Class have not suffered any harm in California.  There is no contact with California for the non-resident members that would justify bringing claims against Primal Queen there, but for Plaintiff's class allegations.

Second, Plaintiff's Complaint fails to address that many of the users that Plaintiff alleges are part of her alleged classes involve users without any injury and standing to bring claims against Primal Queen.  In fact, Plaintiff's Complaint draws no distinction between users who signed up for Primal Queen's subscription service intentionally and those that allegedly were misled by Primal Queen.  As a result, the "Class" and California Subclass" are unascertainable because both include

---

[1] Unless otherwise noted, all references to "Rule" herein are to the Federal Rule(s) of Civil Procedure.

1

users who intentionally signed up for Primal Queen's subscription service and thus, do not have any injury or standing.

Third, Plaintiff's alleged Class and California Subclass cannot be certified under Rule 23(b)(3) because common questions of law and fact are predominated by questions of fact concerning individual user's experiences. For example, there are a variety of individual, fact-intensive inquiries that must be answered first before common questions of law and fact can be determined, including whether each class member saw the disclosure, what disclosure each class member saw, what mode of technology (i.e., cell phone, computer, tablet, etc.) each class member used to access the website, whether each class member purchased the Starter Kit with the intention of enrolling in a subscription, and whether each class member would have still purchased the Starter Kit if they knew they were enrolling in Primal Queen's subscription service. The answers to these individual questions are dispositive of Plaintiff's claims where Plaintiff has alleged her, the Class, and California Subclass were unaware they were signing up for a subscription service. Accordingly, the individualized nature of Plaintiff's claims make certifying the Class and Subclass impracticable.

Therefore, Primal Queen respectfully requests that the Court strikes Plaintiff's putative class action allegations contained in the Complaint with prejudice.

## II.     FACTUAL & PROCEDURAL BACKGROUND

Primal Queen is an online purveyor of dietary supplements registered in Cape Coral, Florida. *See* Plaintiff's Complaint ("Compl.") ¶ 10. Primal Queen maintains an online store (the "Online Store") which allows users to view and/or purchase Primal Queen products, consisting of woman's nutritional supplements. *See id*. A user can access Primal Queen's Online Store through Primal Queen's website, https://primalqueen.com. *See id.* ¶ 2. A link to Primal Queen's website and Online Store can be found on Primal Queen's social media accounts, including Instagram. *See id.* A user that intends to purchase a Primal Queen product through the Online Store must first add the product to their cart, select "check out", and enter payment and contact information (*i.e.*, name, address, phone number). *See id.* ¶ 35. Prior to making the purchase, a user must click the "Pay

now" button above certain disclosures concerning Primal Queen's disclosures and terms are located thereto. *See id.* ¶ 38.

On or about December 10, 2024, Plaintiff visited Primal Queen's website via Instagram and purchased Primal Queen's Starter Kit. *See id.* ¶ 9. Plaintiff alleges that following her purchase, Plaintiff was enrolled in a Surprise Subscription. *See id.* Plaintiff defines a Surprise Subscription as:

> Whenever a consumer purchases Defendant's product – whether it be on the Website or through a social-medial advertisement – Defendant surreptitiously enrolls the consumer in an automatically renewing "subscription" that, unbeknownst to the consumer at the time, results in a recurring charges to the consumer's credit card, debit card, or third-party payment account ("Payment Method") every month, in perpetuity until cancelled.

*See id.* ¶ 2. Further, Plaintiff alleges that Primal Queen "assessed Plaintiff's Payment Method a recurring charge of $47.21 each month" until "Plaintiff canceled her Surprise Subscription". *See id*. Plaintiff alleges that the Surprise Subscription is a violation of the ARL because before Primal Queen failed to provide users with the necessary disclosures and authorizations prior to and after enrolling users in its subscription service. *See id*. ¶¶ 37-49.

As a result, on October 23, 2025, Plaintiff filed this putative class action in the United States District Court Central District of California Superior Court of California on behalf of herself, the Class, and the California Subclass. *See id.* ¶¶ 50, 52. The Class is defined as:

> All persons in the United States who, within the applicable limitation period, up to and including the date of final judgment in this action, were charged a renewal fee for a Surprise Subscription by Defendant.

*See id.* ¶ 50. Similarly, the California Subclass is defined as:

> All persons in the California who, within the applicable limitation period, up to and including the date of final judgment in this action, were charged a renewal fee for a

Surprise Subscription by Defendant.

*See id.* ¶ 52

In sum, Plaintiff brings seven claims for relief: (1) violation of California's Unfair Competition Law ("UCL"); (2) conversion; (3) violation of California's False Advertising Law ("FAL"); (4) violation of California's Consumer Legal Remedies Act ("CLRA"); (5) unjust enrichment/ restitution; (6) negligent misrepresentation; and (7) fraud. *See id.* ¶¶ 62-119.

### III.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) authorizes a court to strike a pleading or any portion thereof on its own motion at any time. *See, e.g., Corr. USA v. Dawe*, 504 F. Supp. 2d 924, 930 (E.D. Cal. 2007) ("The court, however, may make appropriate orders to strike under the rule at any time. Under Rule[2] 12(f), the Court may strike "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "A motion to strike is properly granted where the plaintiff seeks a form of relief that is not available as a matter of law." *Cancinos v. Lockheed Martin Corp.*, 2025 WL 806323, at *5 (C.D. Cal.). "Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery." *Sanders v. Apple Inc.*, 672 F.Supp. 2d. 987, 990 (2009). Even before discovery, "the court must—at an early practicable time—determine by order whether to certify the action as a class action." *Id.* (*quoting* Fed. R. Civ. P. 23(b)(3)).

### IV.     ARGUMENT

#### A. This Court Will Lack Personal Jurisdiction Over the Class.

Every class member must be able to establish one of two types of personal jurisdiction over Primal Queen: general or specific. *See Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (applying Fourteenth Amendment analysis to evaluate personal jurisdiction in federal district court). For a

---

[2] Unless otherwise indicated, all references to "Rule(s)" are to the Federal Rule(s) of Civil Procedure.

4

corporation, general jurisdiction is present in corporation's place of incorporation and principal place of business. *See id.* at 137. Here, Primal Queen was incorporated in Florida and maintains its principal place of business in Florida. *See* Compl. at ¶ 10. This leaves only specific jurisdiction.

For a court to exercise specific jurisdiction, the claims must "arise out of or relate to defendant's contacts with the forum." *See Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 263 (2017) (cleaned up). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *See id.* at 262 (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *See Bristol-Myers*, 582 U.S. at 264. "The burden on the defendant" is the "primary concern" in determining whether specific jurisdiction is present. *See id.* at 263 (citation omitted); *see also Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F. 4th 972, 984 (9th Cir., 2021) (recognizing the "unique burdens placed upon one who must defend oneself in a foreign legal system.").

Although the Supreme Court in *Bristol-Myers* did not directly address whether the required claim-by-claim analysis for specific personal jurisdiction applies "to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there", precedent from the Ninth Circuit suggests it does. *See Bristol-Myers*, 582 U.S. at 278 n.4 (Sotomayor, J., dissenting). In *Moser*, the Ninth Circuit determined that the claims of unnamed class members must be evaluated by the personal jurisdiction analysis under the Due Process Clause of the Fourteenth Amendment. *See Moser v. Benefytt, Inc.*, 8 F. 4th 872, 877 (9th Cir., 2021) (cleaned up). Further, "[t]hat some plaintiffs were injured in California, the Supreme Court held, does not allow the State to assert specific jurisdiction over the nonresidents' claims, even

when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents. *See Moser*, 8 F. 4th at 874 (cleaned up).

Here, although the Class has yet to be certified, Plaintiff's proposed Class will lack specific personal jurisdiction. Simply put, there would be no specific personal jurisdiction over Class members not living in California had they brought the claims alleged in the Complaint individually because the "relevant plaintiffs are not California residents and do not claim to have suffered harm in that State." *See Bristol-Myers*, 582 U.S. at 265. In addition, Plaintiff has not alleged that the Class members suffered any harm specifically in California. In fact, beyond being the place of residence for Plaintiff, nationwide class members not residing in California have no known contact with the state. Merely joining their claims together in a class action does not otherwise provide the Class with specific personal jurisdiction. *See Moser*, 8 F. 4th at 874 ("In Bristol-Myers, the Supreme Court held that the Fourteenth Amendment's Due Process Clause prohibited a California state court from exercising specific personal jurisdiction over nonresident plaintiffs' claims in a mass action against a non-resident company."). As a result, where neither Primal Queen nor the non-California resident Class members have any contacts with California concerning Plaintiff's claims, this Court lacks specific personal jurisdiction over the Class's claims against Primal Queen.

Accordingly, this Court should strike Plaintiff's class allegations where it lacks personal jurisdiction.

**B. Plaintiff's Purported Class and California Subclass Are Unascertainable.**

Under Article III, "[t]o establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Johnson v. Pluralsight, LLC*, 728 Fed. Appx. 674, 675 (9th Cir. 2018) (*quoting Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). "Article III's injury in fact element, the plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *See*

*Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d. 1058, 1069 (S.D. Cal., 2018) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). A "bare procedural violation" is not sufficient to satisfy Article III's standing requirement. *See Spokeo*, 136 S. Ct. 1540 at 1544.

"[N]o class may be certified that contains members lacking Article III standing ... The class must therefore be defined in such a way that anyone within it would have standing." *Sanders*, 672 F.Supp. 2d. at 991 (*quoting Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir.2006)). "A district court is in the best position to determine whether individualized questions, including those regarding class members' injury, 'will overwhelm common ones and render class certification inappropriate under Rule 23(b)(3).'" *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 (9th Cir. 2022) (*quoting Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258, 276 (2014)). Federal courts in California have routinely found that a proposed class is unascertainable where it contains individuals who have not experienced any injuries as alleged by the plaintiff. *See, e.g.*, *Hovsepian v. Apply, Inc.*, 2009 WL 5069144, at *6 (N.D. Cal., 2009); *Sanders*, 672 F.Supp. 2d at 991; *Brazil v. Dell Inc.*, 585 F.Supp. 2d 1158, 1167 (N.D. Cal., 2008).

Here, the Class and California Subclass are unascertainable because both contain individuals who were not injured by Primal Queen. Beyond the physical location differences, members of the Class and California Subclass are defined the same: individuals "who … were charged a renewal fee for a Surprise Subscription" by Primal Queen. *See id.* ¶¶ 50, 52. Since Plaintiff alleges that a Surprise Subscription occurs "[w]henever a consumer purchases [Primal Queen's] products", this means that every user that purchased a Primal Queen product and was enrolled in a subscription— including those user's that intended to enroll in a subscription—are a part of the Class and/or California Subclass. *See* Compl. ¶¶ 2, 50, 52. As a result, Plaintiff's Class and California Subclass as pled will undoubtedly include users who intentionally accessed Primal Queen's website to enroll in a monthly subscription with knowledge that they would be charged a monthly fee in exchange for a monthly product from Primal Queen.

This cannot be the case where individuals who intentionally enrolled in a Primal Queen subscription did not suffer any injury and do not have standing to bring claims against Primal Queen,

as alleged in the Complaint. Said another way, an individual who intentionally enrolled in a Primal Queen product has not "suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Johnson*, 728 Fed. Appx. at 675. Plaintiff cannot reasonably allege that these individuals intentionally purchased a Primal Queen subscription and consented to the monthly recurring charge, yet also allege that they suffered an "economic injury" "[a]s a direct result of [Primal Queen's] violation of the ARL" for receiving the exact subscription they knowingly signed up for. *See* Compl. ¶ 9. Without any injury attributable to Primal Queen's conduct, these individuals lack standing under Article III. *See Johnson*, 728 Fed. Appx. at 675. Thus, since these individuals lack standing, inclusion of these individuals in the Class and California Subclass permit this Court to strike both the Class and California Subclass as unascertainable. *See Sanders*, 6772 F.Supp. 2d. at 991 (striking class where it contained individuals without standing where it included individuals who suffered no damages, did not see any deceptive advertising, and were not deceived by any advertising); *see also Hovsepian*, 2009 WL 6069144 at *6 (determining that "the class is not ascertainable because it includes members who have not experienced any problems with their iMac display screens. Such members have no injury and standing to sue.").

Accordingly, this Court should strike the Class and California Subclass where both include users who lack any injury and standing.

**C. Individualized Issues Predominate Plaintiff's Claims.**

"Under the predominance requirement of Rule 23(b)(3), a district court must find that 'questions of law or fact common to class members predominate over any questions affecting only individual members' before certifying a class." *Bowerman v. Field Asset Services, Inc.*, 60 F.4th 459 (9th Cir. 2023). "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Ambrosio v. Progressive Preferred Ins. Co.*, 154 F.4th 1107, 1109-10 (9th Cir., 2025) (*quoting Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). Moreover, "[a]n individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one

where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *See id*. at 1110.

"Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir., 2001) (*quoting Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir., 1996)). Further, "if the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate.... Moreover, when individual rather than common issues predominate, the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified." *See Zinser*, 253 F.3d at 1189 (*quoting* 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, Federal Practice and Procedure § 1778 at 535–39 (2d ed.1986)).

Here, Plaintiff's proposed Class and California Class will not "help achieve judicial economy" because each class member will need to present "evidence that varies from member to member". *See Zinser*, 253 F.3d at 1189; *see also Ambrosio*, 154 F.4th at 1110 (*quoting Tyson Foods*, 577 U.S. at 453. To that end, Plaintiff alleges ten common questions of law and fact which exist as to all members of the Class and California Subclass, including five of which concern whether Primal Queen violated the ARL, one of which concerns whether Primal Queen violated FAL, CLRA, and/or UCL, one of which concerns whether Primal queen's actions constitute conversion and/or unjust enrichment, and three of which concern what relief Plaintiff is entitled to. *See* Compl. ¶ 55. These questions, however, cannot be answered with general information applicable to all class members—rather they require an individualized and fact-specific assessment for each class member, including what disclosure was available to each class member at the time they made their purchase, whether each class member saw the disclosure or not prior to purchase, whether each class member did or did not affirmatively consent to Primal Queen's subscription service, whether each class member received a follow up email from Primal Queen instructing them on how to cancel their subscription or not, and whether each class member had any difficulty cancelling their subscription or not. *See Ambrosio,* 154 F. 4th at 1110.

For example, Plaintiff alleges that had Plaintiff and class members seen the proper disclosure concerning Primal Queen's subscription, then Plaintiff and members of the class would not have purchased Primal Queen's Starter Kit and thus "would not have become enrolled in Surprise Subscriptions …." *See id.* ¶¶ 72, 91, 99, 105, 113.  Although Plaintiff alleges that she, herself, did not see Primal Queen's terms and disclosures concerning its subscription service, if any one of the Class and/or California Subclass members did see the disclosure and still decided to purchase the Primal Queen Starter Kit, then their claims against Primal Queen would be drastically different than that of Plaintiff's and/or other class members.  Said another way, at a minimum, each class member would need to present evidence if they did or did not see a disclosure, what disclosure they saw, how they saw the disclosure (via mobile phone, computer, tablet, etc.), and whether they relied on this disclosure, or lack thereof, in making their decision to purchase a Primal Queen Starter Kit.  Without this individualized information, it would be impossible for the Court to determine if Primal Queen's subscription disclosure and terms are "clear and conscious" where the disclosures are themselves are entirely different and appear entirely different across various platforms.

Further, Plaintiff alleges that the Surprise Subscription process is "substantially the same" "[r]egardless [of[ whether a consumer purchases a product from Defendant on its website or through one of its social-media advertisements".  *See id.* ¶ 35.  Likewise, Plaintiff alleges that the text she saw at the checkout page, prior to finalizing her purchase with Primal Queen, "appeared in miniscule, inconspicuous font … and would only become visible on a consumer's screen if the consumer scrolled down the Checkout Page past the green button."  *See id.* ¶ 38.  Again, however, a glaring issue arises with this oversimplification—if a user accessed Primal Queen's website on their mobile phone as opposed to a computer, the amount of information (including Primal Queen's disclosures) available on their screen at one time will vary.  Said another way, a user purchasing Primal Queen's Starter Kit on their computer may be able to see more of the entire Checkout Screen, including the disclosures, without needing to scroll down further on the page, compared to a user making the same purchase on their mobile phone—with a much smaller screen—who would likely need to scroll down several times.  Thus, each class member's experience on Primal Queen's

website will differ based upon how they accessed it and navigate the Checkout Page. Accordingly, where the main issues in this case—the Surprise Subscription and disclosures thereto on Primal Queen's website—require individualized assessments to determine whether each class member's claim is viable, this Court should strike Plaintiff's class allegations. *See Zinser*, 253 F.3d at 1189.

## V.     CONCLUSION

Accordingly, Primal Queen respectfully requests that this Court strike Plaintiff's class action allegations in the Complaint with prejudice.

Dated: January 29, 2026                    NELSON MULLINS, RILEY & SCARBOROUGH LLP

                                           /s/ *Dillon Chen*
                                           Dillon Chen

                                           Attorneys for Defendant
                                           PRIMAL QUEEN, LLC

**CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 11-6.2, the undersigned, counsel of record for Defendant Primal Queen LLC, certifies that this brief contains 3862 words, which complies with the word limit under L.R. 11-6.1.

Dated this 29 January 2026.

By: */s/ Dillon Chen*
Dillon Chen

**CERTIFICATE OF COMPLIANCE**

# CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and I served a copy of the foregoing pleading on all counsel for all parties, via the CM/ECF system and/or mailing same by United States Mail, properly addressed, and first class postage prepaid, to all counsel of record in this matter.

By:   */s/ Dillon Chen*
         Dillon Chen