Frank S. Hedin (SBN 291289)
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com

Adrian Gucovschi (State Bar No. 360988)
**GUCOVSCHI LAW FIRM, PLLC**
140 Broadway, 46th Floor
New York, New York 10005
Telephone: (212) 884-4230
E-Mail: adrian@gucovschilaw.com

*Counsel for Plaintiff and Putative Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLISON BLANK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PRIMAL QUEEN LLC,<br><br>Defendant. | Case No. 5:25-cv-02810-KK-AYP<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S RENEWED MOTION TO COMPEL ARBITRATION**<br><br>Date: April 9, 2026<br>Time: 9:30 a.m.<br>Courtroom: 3<br>Judge: Hon. Kenly Kiya Kato<br>First Amended Class Action Complaint filed: February 19, 2025 |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

STATEMENT OF RELEVANT FACTS ....................................................................... 2

LEGAL STANDARD ..................................................................................................... 3

ARGUMENT ................................................................................................................... 4

A.  Defendant Has Not Met Its Burden of Proving an Arbitration Agreement Exists ............... 4

B.  The Checkout Page Does Not Provide Reasonably Conspicuous Notice ........................... 5

    1.  The Visual Design of the Checkout Page ................................................................. 6

    2.  The Transaction Context Weighs Against a Finding of Conspicuous Notice ........... 9

    3.  Defendant Did Not Obtain an Unambiguous Manifestation of Assent ..................... 9

C.  Plaintiff's Claims Do Not Fall Within the Scope of the Arbitration Clause of the Agreement ................................................................................. 11

D.  The Arbitration Agreement Is Procedurally Unconscionable ............................................ 13

E.  The Arbitration Agreement Is Substantively Unconscionable .......................................... 15

CONCLUSION ................................................................................................................ 17

# TABLE OF AUTHORITIES

## CASES

*Armendariz v. Foundation Health Psychcare Servs., Inc.,*
 24 Cal. 4th 83 (2000) ................................................................................................. 13

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
 475 U.S. 643 (1986) .................................................................................................. 12

*Barber v. Cty. of San Bernardino,*
 No. EDCV 22-00625-KK-DTBx, 2026 U.S. Dist. LEXIS 6388 (C.D. Cal. Jan. 7, 2026) ..... 13

*Berman v. Freedom Fin. Network, LLC,*
 30 F.4th 849 (9th Cir. 2022) ....................................................................... 3, 5, 6, 8, 9

*Bielski v. Coinbase, Inc.,*
 87 F.4th 1003 (9th Cir. 2023) ............................................................................. 13, 14

*Blair v. Rent-A-Center, Inc.,*
 928 F.3d 819 (9th Cir. 2019) ..................................................................................... 17

*Brennan v. Opus Bank,*
 796 F.3d 1125 (9th Cir. 2015) ................................................................................... 13

*Burris v. Discover Bank,*
 No. 8:19-cv-1092, 2019 WL 9516076 (C.D. Cal. Sept. 20, 2019) ............................ 11

*Carruth v. KD Creatives, Inc.,*
 No. 2:24-cv-02484 (E.D. Cal. Sep. 10, 2025) ............................................................. 8

*Chabolla v. ClassPass, Inc.,*
 129 F.4th 1147 (9th Cir. 2025) ................................................................... 1, 7, 9, 10

*Chacon v. Barclays,*
 No. 5:23-cv-01393-KK-JC (C.D. Cal.) ......................................................... 1, 4, 5, 7

*Close v. Penney OpCo LLC,*
 787 F. Supp. 3d 1166 (W.D. Wash. 2025) ............................................................... 11

*Coinbase, Inc. v. Suski,*
 144 S. Ct. 1186 (2024) ......................................................................................... 12, 13

*Colgate v. JUUL Labs, Inc.,*
 402 F. Supp. 3d 728 (N.D. Cal. 2019) ....................................................................... 6

*Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.,*
 944 F.2d 1525 (9th Cir. 1991) ........................................................................... 1, 4, 7

*Davis v. O'Melveny & Myers,*
 485 F.3d 1066 (9th Cir. 2007) ................................................................................... 15

*Discover Bank v. Superior Court,*

  36 Cal. 4th 148 (2005) ........................................................................................... 16

*EEOC v. Waffle House, Inc.,*

  534 U.S. 279 (2002) .............................................................................................. 12

*Faucett v. Move, Inc.,*

  No. 24-2631, 2025 U.S. App. LEXIS 8850 (9th Cir. Apr. 15, 2025) ..................................... 13

*Flores v. Transamerica HomeFirst, Inc.,*

  93 Cal. App. 4th 846 (2001) ...................................................................................... 13

*Godun v. JustAnswer LLC,*

  135 F.4th 699 (9th Cir. 2025) .......................................................................... 1, 9, 10

*Hansen v. LMB Mortg. Servs., Inc.,*

  1 F.4th 667 (9th Cir. 2021) ...................................................................................... 3, 4

*Heckman v. Live Nation Ent., Inc.,*

  120 F.4th 670 (9th Cir. 2024) ............................................................... 14, 15, 16, 17

*Herzog v. Superior Ct.,*

  101 Cal. App. 5th 1280 (Ct. App. 2024) .................................................................. 10

*Hooper v. Jerry Ins. Agency, LLC,*

  675 F. Supp. 3d 1027 (N.D. Cal. 2023) .................................................................. 8, 9

*Ingle v. Circuit City Stores, Inc.,*

  328 F.3d 1165 (9th Cir. 2003) ............................................................................ 15, 16

*Jackson v. Amazon.com, Inc.,*

  65 F.4th 1093 (9th Cir. 2023) ..................................................................................... 3

*Keebaugh v. Warner Bros. Entm't Inc.,*

  100 F.4th 1005 (9th Cir. 2024) ................................................................................... 6

*Lee v. Plex, Inc.,*

  773 F. Supp. 3d 755 (N.D. Cal. 2025) ..................................................................... 10

*McGill v. Citibank, N.A.,*

  2 Cal. 5th 945 (2017) ................................................................................... 12, 16, 17

*Meyer v. Uber Techs., Inc.,*

  868 F.3d 66 (2d Cir. 2017) .......................................................................................... 8

*Mondragon v. Sunrun Inc.,*

  101 Cal. App. 5th 592 (2024) ................................................................................... 13

*Nagrampa v. MailCoups, Inc.,*

  469 F.3d 1257 (9th Cir. 2006) (en banc) ................................................................. 16

*Norcia v. Samsung Telecomms. Am., LLC,*

  845 F.3d 1279 (9th Cir. 2017) ................................................................................ 3, 4

*Oberstein v. Live Nation Entm't, Inc.,*
 60 F.4th 505 (9th Cir. 2023)................................................................................................. 8

*OTO, L.L.C. v. Kho,*
 8 Cal. 5th 111 (2019)......................................................................................................... 14

*Patrick v. Running Warehouse, LLC,*
 93 F.4th 468 (9th Cir. 2024)................................................................................................. 8

*Peter v. DoorDash, Inc.,*
 445 F. Supp. 3d 580 (N.D. Cal. 2020)............................................................................. 8, 9

*Ramirez v. Charter Commc'ns, Inc.,*
 16 Cal. 5th 478 (2024)....................................................................................................... 17

*Saadeh v. Solibus Payments,*
 No. 5:24-cv-00135-KK-JC (C.D. Cal.) ................................................................... 1, 4, 5, 7

*Sellers v. JustAnswer LLC,*
 73 Cal. App. 5th 444 (2021)............................................................................................. 6, 9

*Szetela v. Discover Bank,*
 97 Cal. App. 4th 1094 (2002)............................................................................................ 16

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.,*
 925 F.2d 1136 (9th Cir. 1991)....................................................................................... 3, 4, 5

*Ting v. AT&T,*
 319 F.3d 1126 (9th Cir. 2003)........................................................................................... 15

*Zamani v. Carnes,*
 491 F.3d 990 (9th Cir. 2007)............................................................................................. 13

**RULES**

        Fed. R. Civ. P. 56 ................................................................................................... 3,

## I.    INTRODUCTION

Defendant Primal Queen LLC cannot prove the existence of an arbitration agreement. Its Renewed Motion to Compel Arbitration rests entirely on the declaration of Abdurahimbek Shodmonov—a declaration that is expressly made "upon information and belief," not personal knowledge. *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991). That defect alone is fatal. This Court denied motions to compel on this same ground in *Chacon v. Barclays Bank Del.*, 2024 U.S. Dist. LEXIS 211652 (C.D. Cal. Sep. 6, 2024) (Kato, J.), and *Saadeh v. Solibus Payments, Inc.*, 2024 U.S. Dist. LEXIS 207834 (C.D. Cal. Sep. 12, 2024) (Kato, J.). The same result is warranted here.

The evidentiary problem runs deeper than the information-and-belief deficiency. The Shodmonov Declaration does not address—at all—the express checkout buttons that appear at the very top of the checkout page. Plaintiff Allison Blank completed her purchase using the Shop Pay express checkout button rather than inserting her credit card information manually. (Blank Decl. ¶ 5). The declaration does not acknowledge the existence of this button, does not explain what happens when a customer uses it, and does not contend that a customer using express checkout would ever see the terms of service disclosure. Defendant's evidence is not just legally insufficient—it addresses the wrong transaction.

Even setting aside the declaration's deficiencies, the checkout page fails both prongs of the *Berman* test for online contracts. The Ninth Circuit has rejected virtually identical checkout-page designs in two published decisions issued last year. In *Chabolla v. ClassPass, Inc.*, 129 F.4th 1147 (9th Cir. 2025), the court held that a sign-in wrap notice fails where the advisal language does not match the button text, and the notice is deemphasized by the overall page design. In *Godun v. JustAnswer LLC*, 135 F.4th 699 (9th Cir. 2025), the court reaffirmed that "even strongly implicit advisement isn't enough" and that a mismatch between the advisal and the action button is dispositive. *Id.* at 711. Defendant's checkout page fails for the same reasons. Finally, even if Plaintiff assented to the terms, her claims would not be encompassed within the arbitration clause, and the clause is independently procedurally and substantively unconscionable.

For these reasons, and as further described herein, the Court should deny the Motion.

---

## II.     STATEMENT OF RELEVANT FACTS

On or about December 10, 2024, Plaintiff Allison Blank purchased a "Primal Queen Starter Kit" from Defendant's website, www.primalqueen.com. (Blank Decl. ¶ 4; FAC ¶ 26) Plaintiff completed the purchase using the Shop Pay express checkout button—one of three express checkout options (Shop Pay, PayPal, and Apple Pay) displayed at the very top of Defendant's checkout page. (Blank Decl. ¶ 5.)

These express checkout buttons appear above an "OR" divider that separates them from a standard checkout form below. (Gucovschi Decl. Exhibit A). When a customer clicks an express checkout button, she is redirected to the third-party payment processor to complete her purchase. Ms. Blank declares that "[a]t no point before or after my purchase did I see or click on Defendant's terms of service" and that she never saw or agreed to any purported arbitration agreement. (Blank Decl. ¶¶ 6–7.)

Below the "OR" divider, the checkout page contains fields for contact information, delivery address, shipping method, and payment details. Near the very bottom of this lengthy page—well below all form fields—a single line of small text reads: "By completing my purchase, I agree to the terms of service and privacy policy." Below that text is a green "Pay now" button. (Gucovschi Decl. ¶¶ 4–6; Shodmonov Decl. ¶ 17.) This text is visible only to customers who scroll past the express checkout buttons, past the contact fields, past the delivery address, past the shipping selector, and past the payment entry fields. Express checkout customers may never reach it.

The full layout of the checkout page—including the express checkout buttons at the top—is depicted in Plaintiff's full-page screenshots. (Gucovschi Decl. Ex. A and B). Defendant's Exhibit B, by contrast, depicts only the bottom portion of the page and omits the express checkout buttons entirely. (Shodmonov Decl. Ex. B.).

The checkout page also contains a second, separate reference to "terms" in a different location—near the express checkout buttons at the top. That text reads: "By continuing with your payment, you agree to the future charges listed on this page and the cancellation policy." (Gucovschi Decl. Ex. A.) These two notices reference different actions ("continuing with your

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION
CASE NO. 5:25-CV-02810-KK-AYP                                                                 2

payment" vs. "completing my purchase") and different sets of terms ("future charges . . . and the cancellation policy" vs. "terms of service and privacy policy").

After her purchase, Plaintiff was enrolled in a recurring "Surprise Subscription" that charged her $47.21 per month without her knowledge. (FAC ¶ 9.) She was also promoted to purchase Defendant's products based on their purported discounts and health benefits, which she later discovered were false. (FAC ¶¶ 6-7.) She filed this action on behalf of herself and a proposed class, asserting claims under California's consumer protection statutes and common law. (FAC ¶¶ 90–252)

## III.    LEGAL STANDARD

On a motion to compel arbitration, Defendant bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). District courts apply the summary judgment standard of Rule 56. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). The Court "should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991).

Under California law—which governs here because Plaintiff is a Californian who brings California claims—an enforceable online contract requires proof of: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). "The burden is on the party seeking arbitration to show notice and assent." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1100 (9th Cir. 2023).

## IV.    ARGUMENT

### A.    Defendant Has Not Met Its Burden of Proving an Arbitration Agreement Exists

Defendant bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia*, 845 F.3d at 1283. In deciding motions to compel arbitration, courts apply the summary judgment standard of Rule 56. *Hansen*, 1 F.4th at 670. The Court "should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Three Valleys*, 925 F.2d at 1141.

Here, Defendant's sole evidence is the Shodmonov Declaration. That declaration is fundamentally flawed because its key paragraphs—the ones purporting to describe Defendant's checkout process and the terms of service disclosure—are expressly made "upon information and belief." (Shodmonov Decl. ¶¶ 11–17.) When "a declaration is not based on personal knowledge, but on information and belief, his statement does not raise a triable issue of fact." *Columbia Pictures*, 944 F.2d at 1529. Plaintiff's declaration, on the other hand, explicitly states that she did not view or agree to any arbitration agreement. (Blank Decl. ¶¶ 6–7.) This, in and of itself, dooms Defendant's motion.

Furthermore, Defendant's declaration does not address the manner in which Plaintiff actually completed her purchase, nor does it provide any specific rendition of what she would have seen at the time of her purchase. This Court's prior decisions in *Chacon v. Barclays Bank Del.*, 2024 U.S. Dist. LEXIS 211652 (C.D. Cal. Sep. 6, 2024) and *Saadeh v. Solibus Payments, Inc.*, 2024 U.S. Dist. LEXIS 207834 (C.D. Cal. Sep. 12, 2024) are instructive.

In *Chacon*, the defendant submitted a declaration that "merely state[d] Defendant's customary practices when issuing a new credit card" but "fail[ed] to provide any evidence from anyone directly involved in Plaintiff's application process." *Chacon*, 2024 U.S. Dist. LEXIS 211652, at *9. The Court applied *Columbia Pictures* and denied the motion. *Id.* Similarly, in *Saadeh*, this Court denied a motion to compel where: (1) the arbitration document was "not signed by Plaintiff"; (2) there was "no evidence controverting Plaintiff's assertion he 'was never made

aware of' the arbitration clause"; and (3) the defendant "fail[ed] to identify—let alone present evidence of—specific conduct by Plaintiff amounting to a manifestation of assent." *Saadeh*, 2024 U.S. Dist. LEXIS 207834, at *5-6.

The Court's holdings in *Chacon* and *Saadeh* apply with even greater force here. Like the declarant in *Chacon*, Mr. Shodmonov describes only Defendant's general checkout process and provides no evidence from anyone with personal knowledge of what Plaintiff's checkout process looked like on December 10, 2024, the date of her purchase. (Blank Decl. ¶ 4.) The declaration offers no chain-of-custody foundation for the screenshot attached as Exhibit B, no evidence of when it was taken, and no evidence that the checkout page appeared as depicted at the time of Plaintiff's purchase. (Shodmonov Decl. Ex. B.)

Furthermore, just as in *Saadeh*, Defendant fails to identify any specific conduct by Plaintiff amounting to a manifestation of assent. Plaintiff declares she was "never made aware of" any arbitration agreement. (Blank Decl. ¶¶ 6–7.) The Shodmonov Declaration does not identify the specific conduct Plaintiff took in placing her order, does not address the Shop Pay express checkout button Plaintiff actually used (Blank Decl. ¶ 5), and does not contend that a customer using express checkout would ever see the terms of service disclosure. (See Gucovschi Decl. Ex. A (full-page screenshots showing complete checkout interface, including express payment buttons omitted from Shodmonov Decl. Ex. B).) On a motion to compel, the absence of that evidence cannot be resolved in Defendant's favor. *Three Valleys*, 925 F.2d at 1141.

In sum, a declaration based on information and belief, lacking evidentiary foundation, and failing entirely to address how Plaintiff actually completed her purchase cannot establish the existence of an arbitration agreement by a preponderance of the evidence.

**B.     The Checkout Page Does Not Provide Reasonably Conspicuous Notice**

Even if the Shodmonov Declaration were competent evidence—it is not—Defendant fails to establish a valid contract. "To form a contract under California law, the parties must manifest their mutual assent to the terms of the agreement." *Berman*, 30 F.4th at 855. "Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed

contractual terms—will be prominently displayed, not buried in fine print." *Id.* at 857. Unless the website operator can show actual knowledge, an enforceable contract will be found based on an inquiry notice theory only if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* at 856 (emphasis added). When a hyperlink to an agreement is "not conspicuous enough to put [Plaintiff] on inquiry notice," the agreement is not binding. *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 764–65 (N.D. Cal. 2019). Defendant's checkout page fails to satisfy both requirements.

### 1.    *The Visual Design of the Checkout Page*

When analyzing the visual aspects of a webpage, courts consider whether the notice is "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Keebaugh v. Warner Bros. Entm't Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (internal quotation marks and citation omitted). Courts consider several factors including: "(1) the size of the text; (2) the color of the text as compared to the background it appears against; (3) the location of the text and, specifically, its proximity to any box or button the user must click to continue use of the website; (4) the obviousness of any associated hyperlink; and (5) whether other elements on the screen clutter or otherwise obscure the textual notice." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 473 (2021). Defendant's checkout page fails each of these elements.

***First***, the terms of service disclosure on Defendant's checkout page is so tiny that it is "barely legible to the naked eye" and appears on a cluttered, scrolling page, rendering it "the antithesis of conspicuous." *Berman*, 30 F.4th at 856. In *Berman*, the notice was "printed in a tiny gray font considerably smaller than the font used in the surrounding website elements, and indeed in a font so small that it is barely legible to the naked eye." *Id.* The same is true here. A side-by-side comparison of the mobile screens here and in *Berman* is reproduced below.

---




*Berman*, at 859 (Appendix A).        Shodmonov Decl. Ex. B            Gucovschi Decl. Ex. A.

**Second**, even if it were legible, the terms of service "is further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text." *Id.* The page opens with three large, colorful express payment buttons (Shop Pay, PayPal, and Apple Pay) positioned above an "OR" divider. (Gucovschi Decl. Ex. A.) Below that divider, the customer's eye is drawn sequentially through contact fields, delivery address, shipping method, and credit card entry—all in larger text—before reaching the single line of fine print at the very bottom. A customer who uses an express checkout button never reaches that portion of the page at all. See *Chabolla v. ClassPass, Inc.*, 129 F.4th 1147, 1157 (9th Cir. 2025) (notice insufficient where screen contains varying font sizes and images causing notice to fade into irrelevancy).

***Third***, the terms of service disclosure is at the very bottom of a lengthy scrolling page, separated from the action buttons by multiple form fields. A customer using the express checkout buttons would never reach that portion of the page containing the terms of service disclosure at all. *Berman*, 30 F.4th at 857 (rejecting even a notice placed "directly above the button" as insufficient to provide constructive notice).

***Fourth***, "the text that hyperlinks to [the terms of service] is in the same font color as the rest of the sentence in which it sits rather than another contrasting color to indicate the presence of a hyperlink." *Carruth v. KD Creatives, Inc.*, No. 2:24-cv-02484, at 8 (E.D. Cal. Sep. 10, 2025) (quoting *Berman*, 30 F.4th at 854). Defendant's "terms of service" hyperlink is underlined but displayed in the same small font as the surrounding text—with no contrasting color or other differentiating features. That is not enough. *Berman*, 30 F.4th at 857 ("Customary design elements denoting the existence of a hyperlink include the use of a contrasting font color (typically blue) . . . which can alert a user that the particular text differs from other plain text.").

Against this backdrop, Defendant's cited cases are inapposite. Defendant relies on *Oberstein v. Live Nation Ent'm't, Inc.*, 60 F.4th 505 (9th Cir. 2023), but *Oberstein* involved three independent stages of notice—account creation, sign-in, and ticket purchase—each with its own conspicuous disclosure, on undisputedly uncluttered screens, with no express checkout buttons that bypassed the disclosure. Defendant also relies on *Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017), where the registration screen was "uncluttered" and "the entire screen [was] visible at once" without scrolling. 868 F.3d at 78. The *Meyer* court expressly distinguished cluttered interfaces. *Id.* Finally, *Patrick v. Running Warehouse, LLC*, enforced terms where the hyperlink appeared "directly below" the single "Place Order" button on an "uncluttered page." 93 F.4th 468, 477 (9th Cir. 2024). Here, there are four action buttons, the disclosure is not adjacent to any express checkout button, and Plaintiff never reached the disclosure.

Defendant also relies on *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580 (N.D. Cal. 2020), and *Hooper v. Jerry Ins. Agency, LLC*, 675 F. Supp. 3d 1027 (N.D. Cal. 2023). Neither saves Defendant. Both are district court decisions that predate the Ninth Circuit's published holdings in

*Berman*, *Chabolla*, and *Godun*, and cannot survive their holdings. More fundamentally, Defendant invokes *Peter* for the proposition that its checkout screen was "uncluttered and wholly visible," but in the same breath misdescribes its own evidence: Defendant characterizes the checkout page as a "pop-up." (Def.'s Mot. at 8.) It is not. Plaintiff's full-page screenshots depict a lengthy, multi-section scrolling page—beginning with three large express-checkout buttons at the top, followed by contact information fields, a delivery address section, a shipping method selector, and a payment entry section—none of which can be seen simultaneously without extensive scrolling. (Gucovschi Decl. Ex. A.) In *Peter*, the disclosure appeared in a window that was "uncluttered and wholly visible." 445 F. Supp. 3d at 585–86. That bears no resemblance to Defendant's checkout page. *Hooper* relied entirely on *Meyer* and *Peter* for the "uncluttered" proposition. 675 F. Supp. 3d at 1035. For the same reasons those cases are inapposite, so is *Hooper*.

### 2. *The Transaction Context Weighs Against a Finding of Conspicuous Notice*

"[T]he full context of any transaction is critical to determining whether any particular notice is sufficient to put a consumer on inquiry notice of contractual terms." *Sellers*, 73 Cal. App. 5th at 477. The context here weighs heavily against Defendant. As the Ninth Circuit explained, "when a user simply purchases goods or avails herself of a one-time discount offer, there is less reason for her to expect a continued relationship" or to scrutinize the page for small-print terms. *Chabolla*, 129 F.4th at 1155.

Here, Plaintiff had even less reason to be alert than the *Chabolla* plaintiff, who purchased a one-month subscription at a discounted rate. Plaintiff was a social-media-ad shopper using express checkout on a mobile device—precisely the quick, low-engagement transaction where higher notice standards apply. (FAC ¶ 26; Blank Decl. ¶ 4.)

### 3. *Defendant Did Not Obtain an Unambiguous Manifestation of Assent*

"Reasonable conspicuousness alone is not sufficient to bind a user—a user must agree to the terms, not merely see them." *Chabolla*, 129 F.4th at 1158. "[T]he text on an action button matters insofar as it matches an advisal's explanation" and "nothing about the text on an action button by itself can overcome the rule . . . mandating explicit advisement in advisal language so

that there is unambiguous manifestation of assent." *Godun*, 135 F.4th at 713. The advisal must "indicate to the user what action would constitute assent." *Id.* at 708. The checkout page does not.

Specifically, Defendant's advisal states: "By completing my purchase, I agree to the terms of service and privacy policy." (Shodmonov Decl. ¶ 17.) But there is no button on the checkout page that says "Complete my purchase." Instead, the button says "Pay now." (Shodmonov Decl. ¶ 17.) This mismatch is fatal under *Chabolla*. There, the advisal stated "By signing up you agree to our Terms of Use," but the only button read "Continue"—not "Sign up." *Chabolla*, 129 F.4th at 1167. The court held the mismatch was "dispositive" because "[i]t is up to the user to assume that . . . clicking the 'Continue' button amounts to 'signing up,'" and that assumption cannot constitute an unambiguous manifestation of assent. *Id.* at 1158. The *Chabolla* court's reasoning applies verbatim here: it is up to the user to assume that clicking "Pay now" amounts to "completing my purchase." That assumption is not an unambiguous manifestation of assent.

The ambiguity is magnified by the presence of four action buttons on the page: Shop Pay, PayPal, Apple Pay, and "Pay now." (Gucovschi Decl. Ex. A.) The advisal says "By completing my purchase," but any one of these four buttons could complete a purchase. The disclosure does not specify which button the user must click to trigger "completion." See *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 767 (N.D. Cal. 2025) (holding no unambiguous assent because the advisement described two possible actions but "neither matches the 'Continue with Facebook' button that Plaintiff clicked").

Worse still, the checkout page contains two separate references to "terms" in two different locations. Near the express checkout buttons, the page states: "By continuing with your payment, you agree to the future charges listed on this page and the cancellation policy." (Gucovschi Decl. Ex. A.) A consumer who clicks an express payment button, as Plaintiff did, would reasonably understand herself to be agreeing only to the "future charges" and "cancellation policy" referenced near that button—not to the separate "terms of service and privacy policy" buried in small text near the bottom. See *Herzog v. Superior Ct.*, 101 Cal. App. 5th 1280, 1299 (Ct. App. 2024) (finding no unambiguous assent when the webpage "created ambiguity with respect to whether users who

clicked" a particular element "were agreeing" to a narrow set of terms "or whether they were consenting to be bound by all of the terms in the hyperlinked webpage, including the requirement of binding arbitration"). Defendant's checkout page creates the same ambiguity.

### C. Plaintiff's Claims Do Not Fall Within the Scope of the Arbitration Clause of the Agreement

Even if a valid arbitration agreement existed—it does not—Defendant cannot show that Plaintiff's claims fall within the scope of the arbitration agreement. The Arbitration & Class Action Waiver Section—the operative provision for purchase claims—is buried approximately 4,000 words into the terms and states:

> "EXCEPT WHERE PROHIBITED BY LAW, YOU AGREE THAT ANY CLAIM THAT YOU MAY HAVE AGAINST Primal Queen . . . MAY ONLY BE PURSUED AND BROUGHT IN FINAL AND BINDING CONFIDENTIAL ARBITRATION."

(Shodmonov Decl. Ex. C.). Defendant contends that this clause is "broadly written, and directly applicable to Plaintiff's claims, which arise solely out of Plaintiff's purchase[.]" (Def.'s Mot. at 12.). In so doing, Defendant misrepresents both the facts and the law.

First, the arbitration section uses the term "claim" five times, but, unlike most arbitration agreements, it does not define the word even once. Second, contrary to Defendant's contention, the clause contains no "arising out of or relating to" language—unlike *Burris v. Discover Bank*, Defendant's sole citation, which did contain that language. No. 8:19-cv-1092, 2019 WL 9516076, at *3 (C.D. Cal. Sept. 20, 2019). Finally, even under a broad reading, Plaintiff's false-discount statutory claims arose from Defendant's pre-contractual conduct—before Plaintiff ever accessed the checkout page or encountered the terms. *See Close v. Penney OpCo LLC*, 787 F. Supp. 3d 1166, 1172 (W.D. Wash. 2025) (holding that a plaintiff's false discount claims did not "arise from or relate" to her JCPenny membership agreement containing an arbitration clause.).

In fact, Defendant knew how to write a broad arbitration clause but chose not to. In an earlier arbitration clause in the terms—confusingly, there are two clauses—Defendant wrote that

the provision governs any "dispute, claim, or controversy…arising out of or relating to federal or state statutory claims, common law claims, this Agreement, or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, such dispute, claim, or controversy." (Shodmonov Decl. Ex. C.). That provision, however, is "limited to the Program,"  and it expressly disclaims broader effect: "This Agreement is limited to the Program and is not intended to modify other Terms and Conditions or Privacy Policy that may govern the relationship between you and Us in other contexts." (*Id.*). Defendant's omission of such language in the at-issue arbitration agreement is not inadvertent; it is a determinative expression of *expressio unius est exclusio alterius*. "While ambiguities in the language of the agreement should be resolved in favor of arbitration," courts must not "reach a result inconsistent with the plain text of the contract[] simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002) (cleaned up). Such is the case here.

Finally, the at-issue clause contains a carve-out that is independently dispositive: "EXCEPT WHERE PROHIBITED BY LAW, YOU AGREE THAT ANY CLAIM . . . MAY ONLY BE PURSUED AND BROUGHT IN FINAL AND BINDING CONFIDENTIAL ARBITRATION." (Shodmonov Decl. Ex. C) Under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 952–53 (2017), a provision that waives the right to seek public injunctive relief in any forum violates California public policy and is unenforceable. Plaintiff's CLRA and UCL claims expressly seek public injunctive relief prohibiting Defendant's false-discount scheme on a class-wide basis. That relief is "prohibited by law" from mandatory individual arbitration under *McGill*. Defendant's own carve-out therefore removes Plaintiff's public-injunction claims from the scope of the clause. Defendant cannot simultaneously invoke the arbitration clause and ignore the express exception written into it.

For the foregoing reasons, Plaintiff's claims do not fall within the scope of the arbitration clause. Separately, Defendant has not argued in its motion that questions of arbitrability are delegated to the arbitrator. That argument is therefore waived and may not be raised for the first time in a reply brief. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court

need not consider arguments raised for the first time in a reply brief."); *Barber v. Cty. of San Bernardino*, No. EDCV 22-00625-KK-DTBx, 2026 U.S. Dist. LEXIS 6388, at *11 (C.D. Cal. Jan. 7, 2026) ("Defendants' newfound argument was never raised before the Court, it was waived, and is thus wholly without merit.") (cleaned up) (Kato, J.). But even if it did, the argument would fail regardless. Specifically, unlike the first mobile SMS arbitration section, the at-issue arbitration provision contains no delegation clause and grants the arbitrator no authority over arbitrability. And to the extent that the AAA could provide for such delegation, it would not do so here in a consumer contract where purchasers are not sophisticated parties who would parse through 11 pages of densely written terms (with two separate arbitration clauses) and then subsequently read the AAA rules to discover the delegation clause. *Faucett v. Move, Inc.*, No. 24-2631, 2025 U.S. App. LEXIS 8850, at *2 n.1 (9th Cir. Apr. 15, 2025) (acknowledging that the court "ha[s] not yet decided whether *Brennan*'s holding should extend to arbitration clauses in consumer contracts between a sophisticated entity and an average unsophisticated consumer.").

**D.      The Arbitration Agreement Is Procedurally Unconscionable**

The Terms of Service were drafted entirely by Defendant and presented on a take-it-or-leave-it basis. The introductory paragraph states: "If you disagree with any part of the terms then you do not have permission to access the Service." (Shodmonov Decl. Ex. C.) No consumer may negotiate any term. Under California law, "[a] finding of a contract of adhesion is essentially a finding of procedural unconscionability." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001); *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113 (2000). The Ninth Circuit has confirmed that "take-it-or-leave-it adhesion contracts always contain 'some degree of procedural unconscionability.'" *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023).

Defendant's challenge to unconscionability amounts to two arguments: (1) Plaintiff did not allege unconscionability in her complaint; and (2) she could have opted out by "not using Primal Queen's website." (Def.'s Mot. at 10–11.) Neither argument has merit, and Defendant does not attempt to defend any of the specific provisions Plaintiff challenges—the mandatory confidentiality

clause, the punitive damages waiver, the unilateral modification right, the asymmetric condition precedent, or the *McGill*-violating public-injunction bar. The Court should treat Defendant's failure to engage those provisions as a concession that they are unconscionable. As to Defendant's second argument: "opt out by not buying" is not an opt-out mechanism—it is the absence of a consumer relationship entirely. An opt-out right requires that the consumer form the relationship and then be given a meaningful opportunity to reject the arbitration clause while retaining the benefit of the transaction. The Ninth Circuit in *Heckman v. Live Nation Ent., Inc.* and *Bielski* both identified the absence of a meaningful opt-out right as an independent factor weighing toward procedural unconscionability. *Heckman*, 120 F.4th 670, 683 (9th Cir. 2024); *Bielski*, 87 F.4th at 1014–15. Telling a consumer she can avoid the contract by not shopping is not an opt-out—it eliminates the consumer relationship altogether.

Furthermore, the arbitration agreement introduces an element of surprise because "the allegedly unconscionable provision is hidden within a prolix printed form." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125–26 (2019). The terms compound surprise in four ways.

*First*, the Arbitration & Class Action Waiver Section is buried approximately 4,000 words into the document, accessible only via a small hyperlink on a cluttered checkout page that express-checkout users never reach.

*Second*, the terms split the arbitration provisions across two entirely different locations—the SMS Dispute Resolution Section mid-document and the Arbitration & Class Action Waiver Section at the very end—with different scopes, venues (Casper, Wyoming vs. the consumer's state capital), AAA rule sets, and procedures. A consumer who located one section would have no reason to suspect a second, conflicting section exists elsewhere. The Ninth Circuit found extreme surprise under analogous circumstances in *Heckman*, where terms were "so dense, convoluted, and internally contradictory as to be borderline unintelligible." *Heckman*, 120 F.4th at 682–83.

*Third*, there is no opt-out mechanism in the Arbitration & Class Action Waiver Section—in stark contrast to the SMS Dispute Resolution Section, which permits opt-out by texting "STOP."

(Shodmonov Decl. Ex. C.) Defendant knew how to provide opt-out rights and chose not to do so for the provision governing all consumer product-purchase claims.

**Fourth**, the section immediately preceding the Arbitration & Class Action Waiver Section grants Defendant the right to "modify or replace these Terms at any time," with Defendant alone determining what constitutes a "material change." (Shodmonov Decl. Ex. C.) While the Terms state that Defendant will provide 30 days' notice of "material" changes, Defendant retains sole discretion over what is "material"—making that notice provision illusory. Crucially, no savings clause protects claims already accrued. Defendant can therefore alter the arbitration rules mid-dispute while the consumer remains bound by whatever version Defendant selects. See *Heckman*, 120 F.4th at 686; *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003).

### E.    The Arbitration Agreement Is Substantively Unconscionable

In addition to being procedurally unconscionable, the Terms contain multiple provisions rendering the agreement substantively unconscionable.

**First**, the Arbitration & Class Action Waiver Section independently labels all proceedings "FINAL AND BINDING CONFIDENTIAL ARBITRATION." (Shodmonov Decl. Ex. C.) The Ninth Circuit has twice struck down materially identical confidentiality clauses. *Ting v. AT&T*, 319 F.3d 1126, 1152 (9th Cir. 2003) (confidentiality prevents plaintiffs from accessing precedent while the company "accumulates a wealth of knowledge"); *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1078–79 (9th Cir. 2007) (facially mutual confidentiality clause is substantively unconscionable because repeat-player company benefits asymmetrically). Defendant is a repeat player in consumer class actions; a one-time consumer purchaser is not.

**Second**, the Arbitration & Class Action Waiver Section compels consumers to bring "ANY CLAIM" in confidential arbitration, while the "Reselling" section—immediately following—expressly reserves to Defendant the right to pursue "legal action . . . pursuant to California state law and local courts against the offending party within 96 hours." (Shodmonov Decl. Ex. C.) This is a direct, textual reservation of court access for Defendant's own claims, while consumers are stripped of the same. This asymmetry is substantively unconscionable. *Heckman*, 120 F.4th at 686–

87; *Ingle*, 328 F.3d at 1175–76; *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1284–85 (9th Cir. 2006) (en banc).

**Third**, the Arbitration & Class Action Waiver Section requires the consumer—and only the consumer—to send written notice "by registered or certified mail" to a Wyoming P.O. Box, describe the claim "with reasonable particularity," and then wait 30 days for "good faith negotiations" before initiating arbitration. (Shodmonov Decl. Ex. C.) No symmetrical condition applies to Defendant; it may proceed directly to court against resellers within 96 hours. (*Id.*) Defendant itself invokes this asymmetry offensively in its motion, arguing Plaintiff violated a "condition precedent" by not first completing this process. (Def.'s Mot. at 13 n.2.) A condition precedent Defendant need not satisfy is a "manifestly one-sided" term that "shocks the conscience." *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1101–02 (2002).

**Fourth**, as noted above, Defendant reserves the right to modify the arbitration terms at any time, with sole discretion over what changes are "material," and no savings clause for accrued claims. (Shodmonov Decl. Ex. C.) The Ninth Circuit has held that granting one party "the sole authority to amend or terminate the arbitration agreement" renders the modification provision "substantively unconscionable"—particularly when "compounded by the fact that this contract is adhesive in the first instance." *Ingle*, 328 F.3d at 1179.

**Fifth**, the class action waiver is substantively unconscionable because class waivers are unenforceable "when contained in a consumer contract of adhesion, when small damage disputes could predictably arise between the parties, and when the party with the superior bargaining power is alleged to have carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Heckman*, 120 F.4th at 690 (cleaned up) (quoting *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162–63 (2005)). Such is the case here.

Finally, the Arbitration & Class Action Waiver Section's all-forum confidential arbitration requirement forecloses public injunctive relief under the CLRA and UCL in all forums. Under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 952–53 (2017), "a provision in a predispute arbitration agreement that waives the right to seek public injunctive relief in any forum is contrary to

---

California public policy and is thus unenforceable." The FAA does not preempt this rule. *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 828–31 (9th Cir. 2019). Plaintiff seeks relief enjoining Defendant's false-pricing scheme company-wide—relief with the "primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill*, 2 Cal. 5th at 955.

Critically, the Terms foreclose severance of this defect. The class action waiver declares itself "material and essential to the arbitration of any disputes between the parties and non-severable from the agreement to arbitrate claims." (Shodmonov Decl. Ex. C.) If the *McGill*-violating all-forum public-injunction waiver is void—and it is—the entire arbitration clause falls on its own terms.

Furthermore, multiple unconscionable provisions taint the agreement: (1) mandatory confidentiality; (2) de facto reservation of court access for Defendant's claims only; (3) an asymmetric one-sided condition precedent; (4) an illusory unilateral modification right with no savings clause; (5) a class action waiver; (6) prohibition on public injunctive relief; and (7) confusing and contradictory terms (including two arbitration provisions contained within the same document). See *Heckman*, 120 F.4th at 688–89 (declining to sever because "unconscionability permeates all aspects of the arbitration agreement" and the agreement "contained multiple unconscionable provisions" (cleaned up)); *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478 (2024) (greater number of unconscionable provisions makes severance less appropriate).

## V.    CONCLUSION

Defendant has not proven the existence of an arbitration agreement. Its only evidence is a declaration based on information and belief that does not address the transaction Plaintiff actually made. Even on the merits, the checkout page provides neither reasonably conspicuous notice nor an unambiguous manifestation of assent, and the agreement is procedurally and substantively unconscionable. For the foregoing reasons, the Court should deny Defendant's Renewed Motion to Compel Arbitration in its entirety.

Dated: March 19, 2026                           Respectfully submitted,


By:     */s/ Adrian Gucovschi*

Adrian Gucovschi
**GUCOVSCHI LAW FIRM, PLLC.**
Adrian Gucovschi (SBN 360988)
140 Broadway, Fl. 46
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gucovschilaw.com

**-and-**

**HEDIN LLP**
Frank S. Hedin (SBN 291289)
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone: (305) 357-2107
Facsimile: (305) 200-8801
E-Mail: fhedin@hedinllp.com


*Attorneys for Plaintiff*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 11-6.2, the undersigned, counsel of record for Plaintiff Allison Blank, certifies that this brief contains 5921 words, which complies with the word limit under L.R. 11-6.1.

Dated: March 19, 2026                    By: */s/ Adrian Gucovschi*
                                                Adrian Gucovschi

CERTIFICATE OF COMPLIANCE

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and I served a copy of the foregoing pleading on all counsel for all parties, via the CM/ECF system and/or mailing same by United States Mail, properly addressed, and first class postage prepaid, to all counsel of record in this matter.

By: */s/ Adrian Gucovschi*
Adrian Gucovschi

CERTIFICATE OF SERVICE