**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Dillon D. Chen (SBN 311190)
750 B Street, Suite 2200
San Diego, CA 92101
Telephone:    619.489.6191
Facsimile:    619.821.2834
dillon.chen@nelsonmullins.com

Attorneys for Defendant
PRIMAL QUEEN, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLISON BLANK, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>PRIMAL QUEEN LLC,<br><br>　　　　　　　Defendant. | Case No.: 5:25-cv-02810-KK-JC<br><br>**DEFENDANT PRIMAL QUEEN, LCC'S REPLY TO PLAINTIFF'S OPPOSITION**<br><br>Date: April 9, 2026<br>Time: 9:30 a.m.<br>Courtroom: 3<br>Judge: hon. Kenly Kiya Kato<br><br>First Amended Class Action Complaint filed: February 19, 2026 |

---

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ......................................................................................................... 5

        A.      Abdurahimbek Shodmonov's Declaration Establishes That a Valid Arbtiration
                Agreement Exists ...................................................................................... 1

        B.      Plaintiff Had Reasonably Conspicuous Notice of the Arbitration Clause. ............. 5

        C.      Plaintiff's Claims Are Within the Scope of the Arbitration Clause, Despite
                Plaintiff's Requested Injunctive Relief, Because Plaintiff Did Not Suffer an Injury
                in Fact .................................................................................................... 7

        D.      Plaintiff Has Failed to Meet Her Burden in Providing That the Abritration Clause
                Is Both Procedurally and Substantively Unconscionable. ................................. 8

II.     CONCLUSION ..................................................................................................... 11

DEFENDANT PRIMAL QUEEN, LLC'S REPLY TO PLAINTIFF'S OPPOSITION

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Broughton v. Cigna Healthplans of California*
   21 Cal. 4th 1066 (1999) ..............................................................................................7

*Chacon v. Barclays Bank Del.*
   2024 WL 480071 (C.D. Cal. Sep. 6, 2024) ............................................................1, 3

*Columbia Pictures Indus., Inc. v. Pro Real Est. Invs., Inc.*
   944 F. 2F 1525 (9th Cir. 1993) ...................................................................................2

*Davis v. O'Melveny & Meyers*
   485 F. 3d 1066 (9th Cir. 2007) .................................................................................10

*Heckman v. Live Nation Ent., Inc.*
   120 F. 4th 670 (9th Cir. 2024) ..................................................................................11

*Johnson v. Pluralsight, LLC*
   728 Fed. Appx. 674 (9th Cir. 2018)............................................................................ 7

*Lopez v. Stages of Beauty, LLC*
   307 F. Supp. 3d 1058 (S.D. Cal. 2018).......................................................................8

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992)....................................................................................................8

*McGill v. Citibank, N.A.*
   2 Cal. 5th 945 (2017) .................................................................................................7

*Olvera v. El Pollo Loco, Inc.*
   173 Cal. App. 4th 447 (2009) ....................................................................................2

*Saadeh v. Solivus Payments, Inc.*
   2024 WL 4720875 (C.D. Cal. Sep. 12, 2024)........................................................4, 5

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016)....................................................................................................7

*Ting v. AT&T*
   319 F. 3d 1126 (9th Cir. 2003) .................................................................................10

*Peter v. Doordash, Inc.*
   445 F. Supp. 3d 580 (N.D. Cal. 2020) .......................................................................2

**Statutes**
9 U.S.C. § 3...................................................................................................................1

DEFENDANT PRIMAL QUEEN, LLC'S REPLY TO PLAINTIFF'S OPPOSITION

## I.   <u>INTRODUCTION</u>

Defendant Primal Queen, LLC ("Primal Queen") may compel arbitration of Plaintiff Allison Blank's ("Plaintiff") claims because Primal Queen's Terms of Service ("Terms") agreed to by Plaintiff contain a valid, written arbitration clause ("Arbitration Clause") requiring that the claims alleged by Plaintiff in this case be submitted to binding, individual arbitration.  As discussed in Primal Queen's Memorandum of Points and Authorities in Support of its Renewed Motion to Compel Arbitration ("Motion to Compel Arbitration"), Primal Queen's Arbitration Clause and its class action waiver set forth in the Terms are fully enforceable under Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, *et seq*., and this dispute plainly falls within the scope of claims to be arbitrated under the Terms.  Plaintiff's Opposition to Defendant's Renewed Motion to Compel Arbitration ("Opposition") fails to raise any genuine issues of material fact which would prevent this Court from granting Primal Queen's Motion to Compel Arbitration.  *See, e.g.*, *Chacon v. Barclays Bank Del*.  2024 WL 480071, at *3 (C.D. Cal. Sep. 6, 2024).

Accordingly, based on the Terms—and Arbitration Clause therein—and the purchase of Primal Queen's Starter Kit by Plaintiff on Primal Queen's website, a valid and enforceable arbitration agreement exists between the Parties, which encompasses Plaintiff's claims in her First Amended Complaint ("FAC").  Therefore, Primal Queens respectfully requests that this Court grant its Motion to Compel Arbitration and to stay this action pending the completion of such arbitration.

## II.   <u>ARGUMENT</u>

### A. ABDURAHIMBEK SHODMONOV'S DECLARATION ESTABLISHES THAT A VALID ARBITRATION AGREEMENT EXISTS.

Plaintiff suggests that Abdurahimbek Shodmonov's Declaration ("Shodmonov Dec.") does not establish that an arbitration agreement exists.  This is not the case.  Primal Queen has

met its burden, by a preponderance of the evidence, that an agreement to arbitrate exists. *E.g.*, *Peter v. Doordash, Inc.*, 445 F. Supp. 3d 580, 585 (N.D. Cal. 2020) ("In California, a party petitioning the court to compel arbitration bears the burden of proving by a preponderance of evidence the existence of an arbitration agreement.") (cleaned up) (*quoting Olvera v. El Pollo Loco, Inc.*, 173 Cal. App. 4th 447, 453 (2009)). As an initial matter, in the first paragraph of his Declaration, Shodmonov states "[t]he matters set forth below are **based upon my personal knowledge**, if called to testify as a witness, **I could and would competently testify thereto**." *See* Shodmonov Dec., ¶ 1 (emphasis added). Thus, to the extent Plaintiff suggests Shodmonov's Declaration is "fundamentally flawed", it is not. *See* Opposition, at 4. As the Chief Executive Officer of Primal Queen, Shodmonov's Declaration reflects his personal knowledge of how customers, including Plaintiff, purchase products and the Terms they see at Primal Queen's checkout page. *See* Shodmonov Dec., ¶ 2. Despite this, Plaintiff nonetheless relies on three cases to support this unfounded argument.

First, Plaintiff relies on *Columbia Pictures Indus., Inc. v. Pro. Real Est. Invs., Inc.*, for the proposition that if a "declaration is not based on personal knowledge, but on information and belief, his statement does not raise a triable issue of fact". 944 F. 2f 1525, 1529 (9th Cir. 1993). Plaintiff suggests that because Shodmonov's Declaration states "upon information and belief" that his Declaration cannot prove the existence of an arbitration agreement. *See* Opposition, at 4. This is false. In *Columbia*, the declaration in question was entirely speculative as to the potential damages being alleged and was offered in support of a motion for summary judgment. 944 F. 2f at 1529. Not only are the claims and procedural posture of *Columbia* different to the present case, but also the declaration itself is entirely different—said another way, the declarant in *Columbia* speculated what he believed was the reason why another party did not want to make certain investments. Dissimilarly, here, based on his personal knowledge, Shodmonov states the ways

2
DEFENDANT PRIMAL QUEEN, LLC'S REPLY TO PLAINTIFF'S OPPOSITION

in which customers, including Plaintiff, purchase Primal Queen products, where the Terms are located at the checkout page, and what the Arbitration Clause states. *See, e.g.*, Shodmonov Dec., ¶ 16.  Shodmonov is not speculating whether there is an Arbitration Clause or what he thinks could have happened, but rather how a customer, including Plaintiff, purchased Primal Queen's Starter Kit and where the Terms are located on the checkout page.

Even, *arguendo*, if Shodmonov's Declaration alone did not get Primal Queen over the bar of by a preponderance of the evidence standard—which it does—the existence of the arbitration agreement is further bolstered by Plaintiff's allegations in the FAC.  For example, in her FAC, Plaintiff alleges that she purchased Primal Queen's Starter Kit on December 10, 2024 and encountered the screenshotted checkout page included thereto.  *See* FAC, ¶ 39.  Although it is clear by comparison to Shodmonov and Plaintiff's counsel, Adrian Gucovschi's, Declaration ("Gucovschi Dec.) that Plaintiff either intentionally or conveniently on accident, cropped the checkout page in the FAC so that it did not include Primal Queen's Terms disclosure and imbedded hyperlink (collectively "Primal Queen's Disclosure"), her FAC nonetheless establishes that she purchased a Primal Queen product through its website, where the Terms and Arbitration Clause are located.  *Compare* FAC ¶ 39, *with* Shodmonov Dec., Ex. B *and* Gucovschi Dec., Ex. A.  Thus, reviewing Shodmonov's Declaration and the FAC, it is clear by a preponderance of the evidence that an arbitration agreement existed where it is uncontested that Plaintiff accessed Primal Queen's checkout page, which included Primal Queen's Disclosure and binding Arbitration Clause therein.

Second, Plaintiff relies on *Chacon v. Barclays Bank Del.*  2024 WL 480071 (C.D. Cal. Sep. 6, 2024).  *Chacon* is factually dissimilar.  In *Chacon*, this Court denied the defendant's motion to compel arbitration because there was a genuine issue of material fact as to whether the plaintiff ever received any alleged arbitration agreement by mail, after signing up for a credit card

in person. *See id.* at \*2-4. The Court noted that the defendant lacked evidence from any one with personal knowledge of whether Plaintiff actually received the written disclosure including the arbitration agreement. *See id.* at \*4. Dissimilarly here, while Plaintiff now alleges she never saw the Arbitration Clause, as discussed above, Shodmonov's Declaration and Plaintiff's FAC prove otherwise. Looking at the full checkout page, it is clear that a hyperlink to the Terms—including the Arbitration Clause therein—was available to Plaintiff when she accessed Primal Queen's website. *See* Shodmonov Dec., Ex. B; Gucovschi Dec., Ex. A. Plaintiff cannot have it both ways. Plaintiff cannot on the one hand claim in the FAC that she accessed Primal Queen's website and attach a screenshot of the checkout page intentionally cropping the portion of the screenshot which portrays the Terms hyperlinked, and then on the other hand argue she has no knowledge of the Terms but include the full checkout page with the hyperlink to the Terms in her Opposition. Plaintiff's nonsensical argument is entirely different to the questions this Court reviewed in *Chacon* where the plaintiff there was not given the arbitration agreement at the time he signed up for a credit card and the defendants could not prove he ever received the arbitration agreement in the mail thereafter. Said another way, the present facts *could* be analogous to *Chacon* if (i) Primal Queen's Disclosure was not available on its checkout page at the time of Plaintiff's purchase; and (ii) Primal Queen was alleging they sent Plaintiff the Arbitration Clause for the first time after her purchase. This is clearly not the case here.

Third, Plaintiff relies on *Saadeh v. Solibus Payments, Inc*. 2024 WL 4720875 (C.D. Cal. Sep. 12, 2024). In *Saadeh*, this Court denied the defendant's motion to compel arbitration where the plaintiff was not provided with a copy of an alleged agreement, which contained a mandatory arbitration clause, with the defendant. *See id.* at \*1. That is not the case here. As discussed *supra,* here, Plaintiff at all times had access to the Terms and Arbitration Clause. The Terms were not "saved in the corporate book/file" but rather freely accessible and hyperlinked at the

DEFENDANT PRIMAL QUEEN, LLC'S REPLY TO PLAINTIFF'S OPPOSITION

checkout page at the time of Plaintiff's purchase. *See id.* at *3. Moreover, unlike *Saadeh* where the defendant did not offer any evidence that the plaintiff assented to the arbitration agreement terms, here, Plaintiff assented to the Terms and Arbitration Agreement when she completed her purchase. Notably, Primal Queen's Disclosure states "By completing my purchase, I agree to the terms of service and privacy policy."). *See* Shodmonov Dec., Ex. B. Plaintiff then admits in her Declaration that "… **I purchased** Defendant's Primal Queen Starter Kit via Defendant's Website … **In making my purchase**, I clicked on the Shop Express checkout button.") Declaration of Allison Blank ("Blank Dec.") ¶¶ 4-5 (emphasis added). Unlike *Saadeh*, Primal Queen is not merely relying on Plaintiff's "free access" to the Terms and Arbitration Clause; rather, Primal Queen has produced evidence that Plaintiff manifested her assent to the Terms and Arbitration Clause, including Plaintiff's own Declaration. *See id.*

Accordingly, Shodmonov's Declaration sufficiently establishes by a preponderance of the evidence that an arbitration agreement between the parties existed and Primal Queen's Motion to Compel Arbitration should be granted.

## B. PLAINTIFF HAD REASONABLY CONSPICUOUS NOTICE OF THE ARBITRATION CLAUSE.

As discussed in Primal Queen's Motion to Compel Arbitration, Plaintiff has reasonably conspicuous notice of the Arbitration Clause. *See* Motion to Compel Arbitration at 7-10. Nonetheless, Plaintiff now, and for the first time, alleges in her Declaration that when she made her purchase on December 10, 2024, through her mobile device, she "clicked on the Shop Express checkout button." *See* Blank Dec., ¶ 5. Further, Plaintiff alleges "[w]hen a customer clicks an express checkout button, she is redirected to the third-party payment processor to complete her purchase." *See* Opposition, at 2. As a result, Plaintiff hinges, in part, her Opposition on this new process, claiming that since she used the express checkout, she never saw the portion of the checkout page which contains the hyperlink to Primal Queen's Terms. *See* Opposition, at 7. It cannot be overstated that this new and critical process Plaintiff alleges to have engaged in is

neither supported by Plaintiff or her attorney's declaration, nor is it supported by any screenshot of this alleged third-party payment processor page. Worse yet, such express checkout process is in direct conflict with the allegations in Plaintiff's FAC.

Nowhere in Plaintiff's original Complaint, consisting of 119 paragraphs, or Plaintiff's FAC, consisting of 252 paragraphs, does Plaintiff ever discuss this alleged express checkout process. In fact, the FAC is devoid of any allegation that "[e]xpress checkout customers may never reach" the text on the checkout page which states "By Completing my purchase, I agree to the terms of service and privacy policy." *See* Opposition, at 2. Moreover, in Plaintiff's FAC, Plaintiff explicitly states "[r]egradless of whether a consumer purchases a product from Defendant on its website or through its social-media advertisements, the process of making the purchase … is substantially the same … upon navigating the final screen of the check out process [sic] consumers are prompted to input their name, address, other contact information, and the details of their chosen Payment Method." *See* FAC, ¶ 36. Surely, had Plaintiff used this express checkout process, she would have described such process in her FAC. She did not. Shockingly, Plaintiff even appears to concede that when she clicked on the express payment button "[a] consumer … as Plaintiff did … **would reasonably understand herself to be agreeing only to the 'future charges'** and 'cancelation policy' referenced near that button." *Compare* Opposition, at 10 (emphasis added) *with* FAC, ¶ 9 ("when Plaintiff made her purchase, Defendant enrolled Plaintiff in – unbeknownst to her at the time – a monthly recurring subscription…"). Thus, Plaintiff seemingly unravels her own claims involving Primal Queen's alleged violations of California's Automatic Renewal Law ("ARL").

As a result, Primal Queen can only surmise one of two possibilities. First, if Plaintiff's Declaration is true, then Plaintiff is admitting that she used a substantially different means to purchase the Starter Kit—through the express checkout process—than that alleged in the FAC and performed by Plaintiff's alleged classes. Or, second, if Plaintiff's Declaration is false, then Plaintiff must have completed her purchase of the Starter Kit on Primal Queen's standard

checkout page (Shodmonov Dec., Ex. B; Gucovschi Dec., Ex. A) which undoubtedly includes the hyperlinked Terms.

Accordingly, Plaintiff had reasonably conspicuous notice of the Arbitration Clause and Primal Queen's Motion to Compel Arbitration should be granted.

**C. PLAINTIFF'S CLAIMS ARE WITHIN THE SCOPE OF THE ARBITRATION CLAUSE, DESPITE PLAINTIFF'S REQUESTED INJUNCTIVE RELIEF, BECAUSE PLAINTIFF DID NOT SUFFER AN INJURY IN FACT.**

Plaintiff suggests that since she has sought injunctive relief in her FAC that her claims do not fall within the scope of the Arbitration Clause. *See* Opposition, at 11-12. Plaintiff, however, overlooks the fact that she lacks any injury in fact that would provide her standing to seek injunctive relief. In *McGill v. Citibank, N.A.*, the Supreme Court of California addressed whether a party may be bound to arbitration agreement, notwithstanding their request for injunctive relief. *See* 2 Cal. 5th 945, 954 (2017). The Supreme Court stated, "public injunctive relief under the UCL, the CLRA, and the false advertising law is relief that has 'the primary purpose and effect' of prohibiting unlawful acts that threaten future injury to the general public." *Id.* at 955 (*quoting Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066, 1077 (1999)). Further, the Supreme Court determined a private individual may bring a request for injunctive relief on behalf of the general public when the private individual "has suffered injury in fact and has lost money or property as a result of a violation of the UCL or the false advertising law." *See McGill*, 2 Cal.5th at 959 (cleaned up). While the Supreme Court determined, '[a]greements to arbitrate claims for public injunctive relief under the CLRA, the UCL, and the false advertising law are not enforceable in California," it was clear that such requests for injunctive relief are predicated upon a plaintiff having standing to bring such a claim. *See id.* at 956, 959.

Under Article III, "[t]o establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Johnson v. Pluralsight, LLC*, 728 Fed. Appx. 674, 675 (9th Cir. 2018) (*quoting Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). "Article III's injury in fact element, the plaintiff must show that he or she suffered 'an invasion of a legally

protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *See Lopez v. Stages of Beauty, LLC*, 307 F. Supp. 3d. 1058, 1069 (S.D. Cal. 2018) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  A "bare procedural violation" is not sufficient to satisfy Article III's standing requirement.  *See Spokeo*, 136 S. Ct. 1540 at 1544.

Here, Plaintiff lacks any injury in fact.  As stated in Shodmonov's Declaration, Plaintiff purchased Primal Queen's Starter Kit on December 10, 2024 and was charged a total of $47.41, inclusive of applicable fees and taxes.  *See* Shodmonov's Dec., ¶¶ 11-12.  Plaintiff did not place any subsequent orders, did not pay for any subsequent orders, and was not assessed any additional payments beyond her initial order total of $47.41.  *See id.* at ¶¶ 11-14.  Moreover, it is undisputed that Plaintiff intended to purchase the Starter Kit.  *See, e.g.*, Blank Dec., ¶ 4 ("On December 10, 2024, I purchased Defendant's Primal Queen Starter Kit").  Although Plaintiff alleges in her FAC that she was charged a "surprise subscription", there is no evidence of any such subscription ever being charged and/or collected from Plaintiff.  In fact, Primal Queen's customer data of Plaintiff evidences only the single purchase on December 10, 2024.  *See* Shodmonov Dec., Ex. A.  As a result, there is no "concrete and particularized" legally protected interest that Plaintiff can show that was invaded because no alleged violation of the ARL, California's Uniform Competition Law ("UCL"), or California's Consumer Legal Remedies Act ("CLRA") ever occurred—which is primary basis of Plaintiff's request for injunctive relief.  *See, e.g.*, FAC ¶¶ 124-25.  In considering *McGill* with this in mind, it is clear Plaintiff lacks standing to seek injunctive relief, making Plaintiff's argument moot.

Accordingly, Primal Queen's Motion to Compel Arbitration should be granted where Plaintiff's requested injunctive relief will fail because she has not suffered an injury in fact.

### D. PLAINTIFF HAS FAILED TO MEET HER BURDEN IN PROVING THAT THE ARBITRATION CLAUSE IS BOTH PROCEDURALLY AND SUBSTANTIVELY UNCONSCIONABLE.

As discussed in Primal Queen's Motion to Compel Arbitration, there are no proper grounds to revoke the Arbitration Clause.  *See* Motion to Compel Arbitration, at 10-11.  In

addition to those arguments, Plaintiff claims that the arbitration agreement is both procedural and substantively unconscionable. That is not the case.

Regarding procedural unconscionability, Plaintiff claims the Arbitration Clause includes elements of surprise in four ways. *See* Opposition, at 14. First, while Primal Queen's Terms are inclusive of many terms and conditions for accessing and using Primal Queen's website, the Arbitration Clause is clearly set of by its own heading "Arbitration & Class Action Waiver" as well as capitalized and bolded lettering. *See* Shodmonov Dec., Ex. B. Moreover, the hyperlink to the Terms and Arbitration Clause is clearly visible via an underlined hyperlink on Primal Queen's checkout page, before a customer makes a purchase, *and* is available at the bottom of page, in a stand-alone section with an underlined and hyperlink to the Terms. *See* Shodmonov Dec., Ex. B; Gucovschi Dec., Ex. A.

Second, although the Terms also include a dispute resolution section related to the use of Primal Queen's mobile messaging program, the two sections address independent subject matter and are not "split". Plaintiff' premise that "[a] consumer who located one section would have no reason to suspect a second, conflicting section exists elsewhere" is not reflective of a plain reading of the Terms, which evidence no such conflicts. *See* Opposition, at 14. Further, it is entirely reasonable to assume that a consumer who is reviewing the Terms and thereby agreeing to them if they chose to proceed on Primal Queen's website, will read the entirety of the Terms they are agreeing to be bound by.

Third, at all times, Plaintiff had the ability to opt-out of the Arbitration Clause by not proceeding with using Primal Queen's website and making her purchase. Moreover, if Plaintiff wanted to maintain her customer relationship with Primal Queen, Plaintiff could have reached out to Primal Queen to address any concerns she had with the Arbitration Clause. In fact, if Plaintiff had any concerns or questions with any portion of the Arbitration Clause or Terms, Plaintiff could have contacted Primal Queen at support@primalqueen.com, as listed in the Terms. *See* Shodmonov Dec., Ex. B. Plaintiff did not.

9

DEFENDANT PRIMAL QUEEN, LLC'S REPLY TO PLAINTIFF'S OPPOSITION

Fourth, Plaintiff claims that Primal Queen's ability to modify the Terms with thirty days notice of all material changes, is somehow inherently unconscionable.  *See* Opposition, at 15. Nonetheless, Plaintiff overlooks the fact that the Arbitration Clause and the Terms generally, had not been updated at any time relevant to Plaintiff's claims in the FAC.  Moreover, neither the Terms nor the Arbitration Clause have changed since August 26, 2024.  *See* Shodmonov Dec., ¶ 17.  As a result, Plaintiff's argument is entirely speculative and irrelevant.

Even assuming, *arguendo*, that this Court agrees with Plaintiff that the Arbitration Clause is procedurally unconscionable—which it is not—Plaintiff still fails to meet her burden in proving that the Arbitration Clause is substantively unconscionable.  First, Plaintiff suggests the use of the language "final and binding confidential arbitration" is substantively unconscionable.  *See* Opposition, at 15.   Plaintiff relies on two cases and states they are "materially identical confidentiality clauses." *See id.*  They are not.  In both *Ting v. AT&T* and *Davis v. O'Melveny & Meyers*, the confidentiality portions of the arbitration provision prevent discussing the arbitration, the content of the pleading and hearings, any award or results, and the mere existence of the controversy. *See* 319 F.3d 1126, 1151, n. 16 (9th Cir. 2003); 485 F.3d 1066, 1078 (9th Cir. 2007). In stark contrast, Primal Queen's Arbitration Clause imposes none of these requirements.  *See* Shodmonov Dec., Ex. B.  In fact, the extent of the Arbitration Clause's confidentiality requirements is that it "sets forth the terms and conditions of our agreement to find and binding confidential arbitration…" *See id.*  As a result, Primal Queen's confidentiality requirement is not "materially identical" to those already before the Ninth Circuit.

Second, Plaintiff draws a distinction between the rights of Primal Queen's customers and Primal Queen's resellers to suggest this dissimilarity is unconscionable.  *See* Opposition, at 15. However, the two sections are not the same. The "Reselling" section allows Primal Queen to take prompt action against unauthorized third-party resellers who are attempting to sell Primal Queen's products in violation of the Terms.  *See* Shodmonov Dec., Ex. B.  Such immediacy is entirely distinct and has no bearing on the ability for Primal Queen's customers to bring any claim under the Arbitration Clause.  Likewise, in Plaintiff's third argument, despite the fact that the

Arbitration Clause and Reselling sections are entirely unrelated to one another, Plaintiff overlooks the fact that under the Reselling section, Primal Queen states that it will send a cease-and-desist letter within twenty-four hours of notification. *See id.* As a result, Plaintiff's assertion that Primal Queen "may proceed directly to court" is false. Although slightly different, under both the Arbitration Clause and Reselling section, both Primal Queen customers and Primal Queen must make a written disclosure to the other side. In sum, the obligations to seek resolutions are the same.

Fourth, as discussed herein, the Arbitration Clause was never modified during any time relevant to Plaintiff's claims. The fact that it could have been modified and Plaintiff may or may not have received notice depending on whether the modification was material, is entirely speculative and irrelevant.

Fifth, Plaintiff's reliance on *Heckman v. Live Nation Ent., Inc.* is misplaced. 120 F. 4th 670 (9th Cir. 2024). Plaintiff has not alleged any "scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *See id.* at 690. In fact, as discussed herein, Plaintiff was not cheated out of any money. Plaintiff paid $47.41 for the exact Starter Kit product she intended to buy. *See* Shodmonov Dec., ¶ 12. There was no "small sums of money" that Primal Queen cheated her out of. Likewise, Plaintiff's sixth argument fails for the same reasons. As discussed *supra*, Plaintiff did not suffer any injury in fact and has no standing to seek injunctive relief. As a result, the Arbitration Clause is not contrary to California public policy.

Accordingly, Primal Queen's Motion to Compel Arbitration should be granted, where Plaintiff has failed to meet their burden that the Arbitration Clause was both procedurally and substantively unconscionable.

## III. <u>CONCLUSION</u>

Accordingly, for the reasons discussed herein in and in Primal Queen's Primal Queen Memorandum of Points and Authorities in Support of its Renewed Motion to Compel Arbitration, Primal Queen respectfully requests that this Court enter an order compelling Plaintiff to arbitrate

this action against Primal Queen pursuant to the Arbitration Clause in the Terms and stay the instant action pending completion of arbitration.

Dated: March 26, 2026                    NELSON MULLINS, RILEY & SCARBOROUGH LLP

                                         /s/ *Dillon Chen*
                                         Dillon Chen

                                         Attorneys for Defendant
                                         PRIMAL QUEEN, LLC

DEFENDANT PRIMAL QUEEN, LLC'S REPLY TO PLAINTIFF'S OPPOSITION

**CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 11-6.2, the undersigned, counsel of record for Defendant Primal Queen LLC, certifies that this brief contains 3852 words, which complies with the word limit under L.R. 11-6.1.

Dated this 26 March 2026.

By:    */s/ Dillon Chen*
         Dillon Chen

13

**CERTIFICATE OF COMPLIANCE**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system and I served a copy of the foregoing pleading on all counsel for all parties, via the CM/ECF system and/or mailing same by United States Mail, properly addressed, and first class postage prepaid, to all counsel of record in this matter.

By:    */s/ Dillon Chen*
       Dillon Chen

14
**CERTIFICATE OF SERVICE**