UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-02810-KK-AYPx** | Date: | May 4, 2026 |
|---|---|---|---|

| Title: | ***Allison Blank v. Primal Queen, LLC*** |
|---|---|

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    **(In Chambers) Order DENYING Defendant's Renewed Motion to Compel Arbitration [Dkt. 30]**

**I.**
**INTRODUCTION**

On February 19, 2026, plaintiff Allison Blank ("Plaintiff") filed the operative First Amended Class Action Complaint ("FAC") against defendant Primal Queen, LLC ("Defendant"), asserting violations of the California False Advertising Law ("FAL"), California Consumers Legal Remedies Act ("CLRA"), California Unfair Competition Law ("UCL"), and other state law tort claims, arising from Plaintiff's purchase from Defendant's website.  ECF Docket No. ("Dkt.") 22, FAC.  On March 4, 2026, Defendant filed the instant Renewed Motion to Compel Arbitration ("Motion"). Dkt. 30-1, Motion ("Mot.").

The Court finds this matter appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons set forth below, Defendant's Motion is **DENIED**.

///

///

///

///

## II.
## BACKGROUND

### A.    PROCEDURAL HISTORY

On October 23, 2025, Plaintiff commenced this putative class action.  Dkt. 1.  On February 19, 2026, Plaintiff filed the operative FAC, raising claims for (1) violations of the FAL, (2) violations of the CLRA, (3) violations of the UCL, (4) negligent misrepresentation, (5) intentional misrepresentation, (6) unjust enrichment, (7) breach of contract, and (8) breach of express warranty. FAC ¶¶ 90-252.  The action arises from Plaintiff's claim she was "surreptitiously enrolled" in an automatically renewing monthly subscription when she purchased a product on Defendant's website.  Id. ¶ 2.  Plaintiff seeks to bring claims on behalf of all persons in the United States who, in relevant part, (a) "were charged a renewal fee" for Defendant's monthly subscription, (b) purchased said subscription at a purported discount, and (c) purchased Defendant's products "in reliance on Defendant's false representations regarding their efficacy."  Id. ¶ 79.

On March 4, 2026, Defendant filed the instant Motion, arguing a valid arbitration agreement ("Agreement") exists between the parties and forecloses the instant action.  Mot. at 11-17.  In support of the Motion, Defendant submits a declaration from its Chief Executive Officer Abdurahimbek Shodmonov, dkt. 30-2 ("Shodmonov Decl."), and accompanying exhibits, id. ¶¶ 11, 16, 18, Exs. A-C.

On March 19, 2026, Plaintiff filed an Opposition, arguing Defendant fails to prove a valid arbitration agreement exists, and in any event, the purported Agreement is unconscionable.  Dkt. 32, Opposition ("Opp.") at 9-22.  In support of the Opposition, Plaintiff submits declarations from herself, dkt. 32-1 ("Blank Decl."), and her attorney Adrian Gucovschi, dkt. 32-3 ("Gucovschi Decl."), as well as accompanying exhibits, id. ¶ 7, Exs. A-B.

On March 26, 2026, Defendant filed a Reply.  Dkt. 33, Reply.

This matter, thus, stands submitted.

### B.    RELEVANT FACTS

Unless otherwise indicated, the following facts are uncontroverted.  To the extent certain facts are not referenced in this Order, the Court has not relied on such facts in reaching its decision.

#### 1.    Defendant Sells Products Including a "Primal Queen Starter Kit"

Defendant is an online retailer of women's nutritional supplement products, which it sells nationwide through social media and on its website, www.primalqueen.com ("Website").  FAC ¶¶ 2, 11.  One of its products is called a "Primal Queen Starter Kit" ("Kit").  Blank Decl. ¶ 4.  As alleged in the FAC, while the Kit is advertised as providing "more energy, balanced hormones, and improved mood," Defendant's "own study shows that the product ha[s] no statistical significance over a placebo."  FAC ¶ 7; see also id. ¶ 69.

///

### 2.     Defendant Offers Two Purchase Processes

The Website's checkout page reflects two checkout processes for purchasing Defendant's products.  Id. ¶ 39; see also Reply at 9-10.

The first process is reflected at the top of the checkout page, where the Website presents customers with express payment options.  Reply at 9.  A customer seeking to utilize this process is presented with options for direct payment through third-party payment methods Shop Pay, PayPal, and Apple Pay.  Opp. at 7; Reply at 9.  Once a customer clicks one of these methods, "she is redirected to the third-party payment processor to complete her purchase."[1]  Opp. at 7.  A disclaimer immediately under the express payment options reads, "By continuing with your payment, you agree to the future charges listed on this page and the cancellation policy."  Dkt. 32-3 at 2; FAC ¶ 39.  Further down on the same checkout page, under "fields for contact information, delivery address, shipping method, and payment details," Opp. at 7, the Website displays text stating, "By completing my purchase, I agree to the terms of service and privacy policy," ("Acknowledgment"), dkt. 32-4 at 2.

The second process is the non-express payment process, which Defendant calls its "standard checkout."  Opp. at 7.  Under this process, a customer scrolls past the express payment process, as well as fields on the Website that request information about the customer, in order to eventually reach the Acknowlegement.  Dkt. 32-4 at 2; FAC ¶ 39.

### 3.     The Terms of Service Contain an Arbitration Acknowledgement

On August 26, 2024, Defendant's Terms of Service entered effect.  Shodmonov Decl. ¶¶ 17-18; dkt. 30-5, Terms of Service.  The Terms of Service, which are hyperlinked in the Acknowledgement, provide that any dispute between a customer and Defendant must be arbitrated by an arbitrator in Casper, Wyoming.  Shodmonov Decl. ¶¶ 18-19; Terms of Service at 5.

### 4.     Automatically Renewing Monthly Subscription Enrollment

As alleged in the FAC, Defendant "surreptitiously" enrolls its customers in an automatically renewing monthly subscription that continues "in perpetuity until cancelled."  FAC ¶ 2.  According to Defendant, the Kit is the only product it offers through a subscription service.  Shodmonov Decl. ¶¶ 6, 8.  On December 10, 2024, accessed the Website on her mobile device and used the express payment process to purchase a Kit for $47.41.  Blank Decl. ¶¶ 4, 6; FAC ¶¶ 6, 44; Opp. at 15; dkt. 32-4 at 2.  In completing this purchase, Plaintiff claims to have unknowingly enrolled in Defendant's recurring subscription.  FAC ¶¶ 9, 44.  The order confirmation email provided by Defendant indicated Plaintiff would be charged $47.41 for a Kit "[e]very 30 days."  Id. ¶ 44.  Plaintiff cancelled the subscription "[p]romptly after noticing the recurring charges."  Id. ¶ 9.

///

---

[1] The Court notes neither party introduces evidence of the checkout process utilized by the third-party payment processors, and thus, provide no evidence Defendant's Acknowledgement appears on third-party websites.

## III.
## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), a written arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA limits federal court review of arbitration agreements to two gateway arbitrability issues: (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue." Bielski v. Coinbase, Inc., 87 F.4th 1003, 1009 (9th Cir. 2023) (internal quotation marks omitted). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

In ruling upon a motion to compel arbitration, "district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." Hansen v. LMB Mortg. Servs., Inc., 1 F.4th 667, 670 (9th Cir. 2021). The party seeking to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." Norcia v. Samsung Telecomms. Am., LLC, 845 F.3d 1279, 1283 (9th Cir. 2017) (internal quotation marks omitted). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into [an arbitration agreement]." Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir. 1980)).

## IV.
## DEFENDANT'S REQUEST FOR AN
## ORDER COMPELLING ARBITRATION IS DENIED

### A.    APPLICABLE LAW

To determine whether a valid agreement to arbitrate exists, federal courts "apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). "Federal courts sitting in diversity look to the law of the forum state . . . when making choice of law determinations." Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014) (citing Hoffman v. Citibank (S. Dakota), N.A., 546 F.3d 1078, 1082 (9th Cir. 2008) (per curiam)). Under California law, the parties' choice of law will govern unless section 187(2) of the Restatement (Second) of Conflict of Laws dictates a different result. Id.

Under California law, "mutual assent is a required element of contract formation." Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." Three Valleys Mun. Water Dist., 925 F.2d at 1141 (quoting Par-Knit Mills, Inc., 636 F.2d at 54).

With respect to online agreements, "[u]nless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or

checking a box, that unambiguously manifests his or her assent to those terms." Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 856 (9th Cir. 2022) (citations omitted). To be conspicuous, the notice "must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." Id. "A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." Id. at 857.

Courts must also consider the "full context of the transaction," such as whether the type of transaction "contemplates entering into a continuing, forward-looking relationship" that would be governed by the terms and conditions. Godun v. JustAnswer LLC, 135 F.4th 699, 710 (9th Cir. 2025) (citing Keebaugh v. Warner Bros. Ent. Inc., 100 F.4th 1005, 1017 (9th Cir. 2024); Sellers v. JustAnswer LLC, 73 Cal. App. 5th 444, 481 (2021)). However, "the context of the transaction is a non-dispositive factor under California law, used to evaluate whether a website's notice is sufficiently conspicuous. Courts must still evaluate the visual aspects of the notice under the two-part test [the Ninth Circuit] articulated in Berman." Keebaugh, 100 F.4th at 1019 (citing Oberstein v. Live Nation Ent., Inc., 60 F.4th 505, 516 (9th Cir. 2023); Patrick v. Running Warehouse, LLC, 93 F.4th 468, 477 (9th Cir. 2024)).

## B.    ANALYSIS

As an initial matter, because Plaintiff raises her allegations on behalf of purported classes of Defendant's customers, the Court considers the nature of the notice provided to her as an individual. Cf. In re Stubhub Refund Litig., No. 20-md-02951-HSG, 2021 WL 5447006, at *6-7 (N.D. Cal. Nov. 22, 2021) (considering how multiple named individually plaintiffs engaged with the relevant interfaces in ruling on motion to compel arbitration), aff'd, No. 22-15879, 2023 WL 5092759 (9th Cir. Aug. 9, 2023).

Plaintiff contends, and Defendant does not meaningfully dispute, she did not receive actual notice of the Acknowledgement. Blank Decl. ¶¶ 6-8 (stating Plaintiff was "unaware whether an arbitration agreement has ever existed during [her] course of dealing with Defendant"); see also Mot. at 13 (suggesting Plaintiff "was confronted" with the Acknowledgement when she used the non-express checkout process). Hence, the inquiry is whether (1) Defendant's Website – through the Acknowledgment – provided reasonably conspicuous notice of the Terms of Service to which express payment customers would be bound; and (2) express payment customers took some action, such as clicking a button, that unambiguously manifested their assent to those Terms of Service. Berman, 30 F.4th at 856. For the reasons set forth below, the Court does not reach the second prong because Defendant has not met its burden of establishing "the website provides [express payment customers] reasonably conspicuous notice of the terms to which the consumer will be bound." Id.; see also Norcia, 845 F.3d at 1283.

Plaintiff submits a declaration attesting she completed her purchase of the Kit using an express payment process. Blank Decl. ¶ 5. After she selected her payment method, the Website redirected her to a third-party processor that did not require her to view the Acknowledgement to complete her purchase. Opp. at 7. While Defendant initially claimed all customers of the Website "must" click the "Pay now" button and enter their payment information, Mot. at 10, Defendant's

---

**CIVIL MINUTES—GENERAL**

Reply concedes Plaintiff may have purchased the Kit using the express checkout process and recognizes the express payment process involves a "substantially different" process, Reply at 8-10.[2]

Turning to the express checkout process, it is undisputed that a customer using the express checkout process is not required to scroll to the portion of the page containing the Acknowledgment.  FAC ¶ 40; dkt. 32-3 at 2; see also Reply at 9-10 (calling the express payment process "substantially different" from the non-express payment process).  Defendant characterizes this Acknowledgment as having been "freely accessible" to Plaintiff at the time of her purchase.  Reply 7-8.  However, if a customer may not even see the Acknowledgment before clicking "the operative . . . button," as is the case here, the Court cannot find it to be "reasonably conspicuous."  Cf. Keebaugh, 100 F.4th at 1020-21 (finding an acknowledgement "[d]irectly beneath the operative [] button" provided reasonably conspicuous notice); Reply at 7-8.  Here, the Acknowledgement is buried at the bottom of the page underneath "fields for contact information, delivery address, shipping method, and payment details" that are all inapplicable to express payment customers.  Opp at 7; Reply at 9-10.  Thus, "the overall design of the webpage" draws an express payment process customer's attention "away from the . . . critical text."  Berman, 30 F.4th at 857.  The Terms of Service, while underlined, do not represent the hyperlink with blue font or other color contrast.  Id. at 854.  The Acknowledgment is not displayed in a "format such that the court can fairly assume that a reasonably prudent Internet user [using the express checkout process] would have seen it."  Oberstein, 60 F.4th at 515-17 (citation modified) (finding reasonably conspicuous notices "were not buried on the bottom of the webpage or placed outside the action box, but rather were located directly on top of or below each action button"); see also Rushing v. Williams-Sonoma, Inc., No. 16-cv-01421-WHO, 2025 WL 2391394, at *7-8 (N.D. Cal. Aug. 18, 2025) (noting the "clustered" nature of the checkout page failed to provide sufficient notice).  Thus, the Acknowledgement was clearly "[]avoidable to a consumer placing an online order" through the express payment process.  Patrick v. Running Warehouse, LLC, No. CV 21-09978-ODW-JEMx, 2022 WL 10584136, at *5 (C.D. Cal. Oct. 18, 2022), aff'd, 93 F.4th 468 (9th Cir. 2024).

Finally, Defendant "present[s] no evidence controverting Plaintiff's assertion" she was unaware of the Acknowledgement.  Saadeh v. Solibus Payments, Inc., No. EDCV 24-745-KK-SHKx, 2024 WL 4720875, at *3 (C.D Cal. Sep. 12, 2024); Blank Decl. ¶¶ 6-8.  Defendant's only evidence for the Website's contents are the "information and belief" of Defendant's executive, see Shodmonov Decl. ¶ 16, which do not "speak to Plaintiff being on notice of the arbitration clause" at the time of her purchase, Chacon v. Barclays Bank Del., No. EDCV 24-00583-KK-DTBx, 2024 WL 480071, at *3 (C.D. Cal. Sep. 6, 2024).

---

[2] Defendant also argues Plaintiff's claim of using the express payment process is suspect because she did not reference the express payment process in the FAC.  Reply at 9.  However, the FAC does in fact allege the existence of the express payment process – specifically by including an image of the process – and states "there is no reason to believe that any consumer who placed an order on the [c]heckout [p]age ever saw the [Acknowledgment] before placing an order."  FAC ¶¶ 39-40.

Hence, because the Court finds Defendant's Website did not provide reasonably conspicuous notice of the Terms of Service to which Plaintiff would be bound, the Court declines to find a valid arbitration agreement exists between the parties.[3]  See Chiron Corp., 207 F.3d at 1130.

## V.
## CONCLUSION

For the reasons set forth above, Defendant's Renewed Motion to Compel Arbitration is **DENIED**.

**No later than seven (7) days from the date of this Order**, Plaintiff shall file a statement indicating whether she intends to proceed representing only those purported class members who employed the express payment process.  **Plaintiff is expressly warned that failure to timely comply with this Order will result in sanctions which may include dismissal for failure to prosecute and comply with Court orders**.  See Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

---

[3]  In her FAC, Plaintiff appears to seek to represent both express and non-express payment customers.  FAC ¶¶ 39-40, 79-80; Opp. at 10-16.  However, based upon her declaration in support of her Opposition to the instant Motion, Plaintiff makes clear she used an express payment method to purchase the Kit and inadvertently register for the subscription.  Blank Decl. ¶¶ 4-5.  To the extent Plaintiff seeks to bring claims on behalf of customers who used the non-express payment process, she does not appear to have standing to bring those claims.